**UNITED STATES of America,
Appellee,**

**v.**

**James T. MOLONEY, aka James
Maloney, aka Jim Monroe,
Defendant–Appellant.**

**Nos. 00–1313, 00–1314.**

United States Court of Appeals,
Second Circuit.

Argued April 9, 2001.

Decided April 9, 2002.

**238**

Kim P. Bonstrom, Bonstrom & Murphy, New York, NY, for Defendant–Appellant.

Burton T. Ryan, Jr., Assistant United States Attorney (Alan Vinegrad, United States Attorney, Eastern District of New York, Jo Ann M. Navickas, Assistant United States Attorney, on the brief), Brooklyn, NY, for Appellee.

Before WALKER, Chief Judge, McLAUGHLIN, SOTOMAYOR, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Defendant-appellant James T. Moloney pled guilty to eight counts of mail fraud, 18 U.S.C. § 1341, five counts of wire fraud, 18 U.S.C. § 1343, one count of bank fraud, 18 U.S.C. § 1344, and one count of money laundering, 18 U.S.C. § 1956. The United States District Court for the Eastern District of New York (Jacob Mishler, *District Judge* ) accepted Moloney's plea on October 22, 1999 and sentenced him on April 11, 2000 to sixty-three months imprisonment, five years supervised release, $2,068,990 restitution, and a $1600 special assessment. Moloney now appeals his conviction on the money laundering count, arguing that his conviction suffered from a jurisdictional defect in that the indictment failed to state a cognizable offense. He also argues that his sentence was improperly calculated. We reject both claims and affirm his conviction and sentence.

## BACKGROUND

James Moloney is a paradigmatic example of an entrepreneur who, as his business was failing, turned to fraud to maintain the lifestyle to which he had become accustomed. In the 1980s, Moloney owned and operated American Capital Resources ("ACR"), a legitimate investment brokerage firm. ACR specialized in brokering high-yield, federally insured certificates of deposit ("CDs") by matching banks willing to issue CDs with purchasers in exchange for a placement fee. Unfortunately, ACR was unable to produce enough revenue to meet its expenses and filed for bankruptcy in 1989.

Having failed in a legitimate business, Moloney embarked on an illegitimate one: a classic Ponzi scheme. Under the alias of "Jim Monroe," Moloney organized American Capital Securities ("ACS") in 1990. ACS ostensibly offered clients the opportunity to pool their money with other clients to buy master CDs with both higher face values and higher rates of return. In reality, ACS never purchased any CDs. Instead, Moloney used some of the investment funds he received to make interest payments to investors, thus preserving the facade of successful investments and encouraging further and new investments, while he diverted the rest of the funds to maintain a lavish lifestyle and to engage in various highly speculative, and ultimately unsuccessful, investments of his own. Between 1990 and 1999, Moloney fraudulently accumulated over $2.2 million from six individual investors and several banks.

By the beginning of 1999, Moloney's scheme was unraveling. Moloney stopped making interest payments and told his clients that he no longer worked for ACS. When Moloney's clients made inquiries of the banks that had supposedly issued the master CDs, they learned that no CDs had been issued and that several of the banks were, in fact, no longer in business. Moloney's clients reported him to the Federal Bureau of Investigation, which led to his prosecution and guilty plea. On appeal,

Moloney attacks both his indictment and sentence with respect to the money laundering count.

## DISCUSSION

Moloney argues that the indictment's money laundering count failed to state a cognizable offense and that the district court thus lacked jurisdiction to convict him on that count. The money laundering count charged Moloney with a series of financial acts that he engaged in over the course of several years.[1] Moloney argues that 18 U.S.C. § 1956 does not create a continuing offense and that each individual use of money derived from crime must be charged as a separate count. Although Moloney acknowledges that some of his acts individually violated § 1956, he argues that the government could not aggregate the acts together into a single count. Because, as we will explain below and as Moloney acknowledges, any claim that the indictment was duplicitous was waived by his guilty plea, his claim on appeal is limited to a jurisdictional one: that the offense he was convicted of was not a crime under the statute. Moloney also challenges his sentence, arguing that the district court improperly applied the Sentencing Guideline for money laundering in effect at the time of sentencing. Moloney was sentenced based on a base offense level of 23, because he was convicted under § 1956(a)(1)(A). He argues that he should have been sentenced based on a base offense level of 20, because he only concealed funds and did not use them to promote criminal activity.

### I. Money Laundering as a Continuing Offense

Because of his guilty plea, Moloney has waived any and all non-jurisdictional defects in the indictment. *See United States v. Spada*, 331 F.2d 995, 996 (2d Cir.1964) (per curiam). Moloney has thus waived any argument that the indictment was improperly duplicitous.

Our cases clearly lay out the reasons underlying the rule against duplicitous indictments. The policies include:

avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution.

*United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir.1981).

A guilty plea waives any challenges to a duplicitous indictment. *See* Fed. R.Crim.P. 12(b)(2). However, Moloney's claim that the indictment charges a non-offense is not waived, because such a claim asserts a jurisdictional defect that goes to the power of a federal court to try a defendant. *See United States v. Ury*, 106 F.2d 28 (2d Cir.1939). The appeal raises

---

**1.** The indictment stated, in pertinent part, "between October 29, 1990 and [July 8, 1999], within the Eastern District of New York and elsewhere, the defendant JAMES T. MOLONEY, also known as 'Jim Monroe,' knowing that the property involved in the financial transactions, represented the proceeds of some form of unlawful activity, did knowingly and intentionally conduct financial transactions affecting interstate commerce, to wit: bank deposits into the corporate checking account of ACS totaling in excess of $2,000,000, which transactions in fact involved the proceeds of specified unlawful activities, to wit: mail fraud, wire fraud and bank fraud, in violation of Title 18, United States Code, Sections 1341, 1343 and 1344 respectively, with the intent to promote the carrying on of said specified unlawful activities."

the question of whether an indictment charging money laundering as a continuing offense states an offense which is cognizable, in the sense of charging conduct made illegal by statute.

■ Unlike a claim of duplicity in the indictment, a claim that the indictment charges a non-offense implicates the jurisdiction of the federal courts by raising the danger of the prosecution of a person who has not violated any criminal statutes. It is a fundamental principle of the American criminal justice system that a person can commit a crime only by violating a pre-existing criminal statute. *See, e.g.,* U.S. Const. art. I, §§ 9 & 10 (prohibiting ex post facto laws). Accordingly, no defendant may be prosecuted for conduct that the legislature has not prohibited in terms that afford the defendant prior notice of its illegality.

However, these concerns are only weakly implicated where it is claimed that an indictment fails to charge a cognizable offense because it charges a continuing offense even though Congress did not expressly prohibit a continuing offense. Because these claims acknowledge the illegality of the individual acts alleged, they do not truly implicate the possibility of an innocent person being convicted. Rather, these claims suggest that the form of the indictment was wrong, in that it grouped offenses that could have been validly charged as individual counts into a collective count that, it might be argued, charges no crime. But claims that the indictment groups counts impermissibly are sufficiently addressed by the doctrine of duplicity, which inherently addresses the form of an indictment and protects against issues of confusion, pretrial notice, and jury compromises which are not implicated in this case. Raising such formalistic errors in framing an indictment to the level of jurisdictional defects exalts form over substance without providing any additional substantive benefit.

■ In response to certain claims of duplicity, this circuit has adopted a general rule that criminal charges may aggregate multiple individual actions that otherwise could be charged as discrete offenses as long as all of the actions are part of "a single scheme." *Margiotta,* 646 F.2d at 733; *see also United States v. Aracri,* 968 F.2d 1512, 1518 (2d Cir.1992); *United States v. Tutino,* 883 F.2d 1125, 1141 (2d Cir.1989) (upholding aggregation of several heroin sales into a single count of distributing heroin because the sales were part of a single continuing scheme). Although these cases address whether the indictments were duplicitous or improperly aggregated total drug quantity for sentencing purposes, they necessarily also address *sub silentio* the jurisdictional issue of whether schemes charged as single counts constitute cognizable crimes because courts must correct jurisdictional defects sua sponte. Congress could, of course, pass a criminal law that could not be applied to a unified scheme. The question here is whether the money laundering statute should be interpreted as such a law.

The Eleventh Circuit has concluded that money laundering as prohibited by 18 U.S.C. § 1956 is not a continuing offense. *United States v. Kramer,* 73 F.3d 1067, 1072–73 (11th Cir.1996). Some district courts agree. *See United States v. Gray,* 101 F.Supp.2d 580, 585 (E.D.Tenn.2000); *United States v. Conley,* 826 F.Supp. 1536, 1543–44 (W.D.Pa.1993). However, those courts lack the Second Circuit's general presumption in favor of allowing a common scheme to be treated as part of a single offense.

The language of § 1956 is ambiguous as to whether it extends to continuing schemes. The money laundering statute

applies to those who conduct or attempt to conduct a "financial transaction" with the proceeds of unlawful activity in an effort to either promote unlawful activity or conceal the proceeds of unlawful activity. *See* 18 U.S.C. § 1956. The term "financial transaction" is capable of different meanings. It can mean a single interaction, such as the depositing of a check or an isolated purchase. *See, e.g., United States v. Li,* 55 F.3d 325, 330 (7th Cir.1995). However, many small transactions may also make up one large financial transaction, as any attorney who manages a real estate closing or corporate acquisition is aware. We have previously held that sequences of steps taken as part of a common scheme constitute one transaction for purposes of the money laundering statute. *United States v. Harris,* 79 F.3d 223, 230–31 (2d Cir.1996). The Supreme Court has yet to definitively rule on whether money laundering can be a continuing offense, but has explicitly acknowledged that possibility. *United States v. Cabrales,* 524 U.S. 1, 8, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998).

■■■ Moloney argues that § 1956's legislative history clearly establishes that "financial transaction" refers only to each individual use of "dirty money," not to the overall scheme. *See* S.Rep. No. 99–433, at 12 (1986). Even if we accepted the legislative history as authoritative, his argument would be unpersuasive because the senate report speaks merely to the smallest unit of prosecution permissible, not to whether multiple transactions can be treated as part of a larger transaction charged as a single count. The legislative history does nothing to undercut the Second Circuit's general rule allowing multiple acts that are part of a single scheme to be charged as a single count.

■■■ Because no convincing reason exists to deviate from this court's general rule, we hold that a single money laundering count can encompass multiple acts provided that each act is part of a unified scheme. This conclusion is particularly sound because money laundering frequently involves extended sequences of acts designed to obscure the provenance of dirty money. In this case, allowing Moloney's unified scheme to be covered by a single count eliminates the cumbersome and largely pointless need to charge him with a count of money laundering for every "interest" payment he mailed to any of his clients. Accordingly, we conclude that the government's decision to charge Moloney with a single count of money laundering did not charge him with a non-offense, because money laundering can be a continuing offense when the individual acts are part of a single, unified scheme. Because Moloney waived any claim that the indictment was duplicitous by pleading guilty, we affirm his conviction.

## II. Sentencing

■■■ Moloney also challenges his sentence. Under the version of § 2S1.1 of the Sentencing Guidelines in effect at the time of his sentencing, since amended,[2] the base offense level for money laundering was 23 if the defendant was convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A)the subsections covering money laundering that "promotes" an unlawful activity. The base offense level for money laundering that concealed the proceeds of

**2.** U.S.S.G. § 2S1.1 was amended, effective November 1, 2001, to set the base offense level as the offense level for the underlying offense that produced the laundered money. The amendment does not entitle Moloney to relief because it "is a substantive change to the Sentencing Guidelines." *United States v.*

*Sabbeth,* 277 F.3d 94, 99 (2d Cir.2002). When a change to the Guidelines is substantive in nature and is not "merely a clarification," it is not retroactively applicable. *United States v. Kim,* 193 F.3d 567, 578 (2d Cir. 1999).

an unlawful activity was 20. Moloney was charged with and sentenced for violating § 1956(a)(1)(A) for money laundering with the intent to promote the carrying on of unlawful activity. Moloney argues that his money laundering was only intended to conceal his fraud, not to promote it. However, the government argues that by using some of the fraudulently obtained funds to make purported interest payments, Moloney engaged in money laundering with the intent to promote unlawful activity. We agree with the government. A Ponzi scheme by definition uses the purportedly legitimate but actually fraudulently obtained money to perpetuate the scheme, thus attracting both further investments and, in many cases, new investors to defraud. Under those circumstances, defendants are appropriately sentenced for engaging in money laundering to promote unlawful activity. We thus affirm Moloney's sentence as well.

## CONCLUSION

We affirm Moloney's conviction and sentence.