10-3424-cr (L)
United States v. Davis

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 8th day of August, two thousand twelve.

PRESENT:  PIERRE N. LEVAL,
            REENA RAGGI,
            DENNY CHIN,
                *Circuit Judges*.

-----------------------------------------------------------------------

UNITED STATES OF AMERICA,
            *Appellee*,

v.

ALTON DAVIS, RODERICK GUNN, AKA ZAPPA,
            *Defendants-Appellants*,

DERRILYN NEEDHAM, AKA INGRID, RONALD KNIBBS, AKA BIRDIE,
            *Defendants*.

Nos. 10-3424-cr (L);
10-3453-cr (CON)

-----------------------------------------------------------------------

APPEARING FOR APPELLANTS:  ANDREW M. ST. LAURENT, Harris, Cutler & Houghteling LLP, New York, New York, *for* Alton Davis

HOWARD JACOBS (Jeremy B. Sporn, *on the brief*), New York, New York, *for* Roderick Gunn

APPEARING FOR APPELLEE:        JOHN J. O'DONNELL (Jennifer E. Burns, Iris Lan, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York

Appeal from judgments of the United States District Court for the Southern District of New York (William H. Pauley III, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments of conviction entered on August 24, 2010, are AFFIRMED.

Alton Davis and Roderick Gunn appeal from judgments entered after jury trial convicting them of conspiring and attempting to violate the Hobbs Act, see 18 U.S.C. § 1951; related firearms offenses causing death, see id. § 924(c), (j)(1); and conspiring to possess with intent to distribute marijuana, see 21 U.S.C. §§ 841(a)(1), 846. This order addresses all of defendants' claims except challenges by Davis to venue, which we address in an opinion issued simultaneously with this order. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision with respect to the claims addressed herein.

1.      Claims of Both Defendants

     a.      Interstate Commerce

In challenging the sufficiency of the evidence supporting the interstate commerce element of their Hobbs Act convictions, defendants assume a heavy burden, see Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord United States v. Abu-Jihaad, 630 F.3d 102, 134–35 (2d Cir. 2010), cert. denied, 131 S. Ct. 3062 (2011), which is made all the more so

2

by the well-established principle that even a "potential or subtle effect" on interstate commerce will satisfy this element, United States v. Wilkerson, 361 F.3d 717, 726 (2d Cir. 2004) (internal quotation marks omitted).

With regard to the attempted Elmont robbery, this potential effect was established by the victim's testimony that, six times per week, he traveled to Manhattan and the Bronx to deal marijuana that came from California. See, e.g., United States v. Elias, 285 F.3d 183, 189 (2d Cir. 2002). With regard to the attempted Wickham robbery, the potential effect was established by evidence that the victim was a marijuana dealer, whose money had recently "gone to market" to purchase more drugs, Trial Tr. 758–59, coupled with expert testimony that trafficking quantities of marijuana are commonly produced outside New York State. See United States v. Parkes, 497 F.3d 220, 231 (2d Cir. 2007).

Insofar as defendants further challenge the district court's interstate commerce charge in light of United States v. Gomez, 580 F.3d 94, 100 (2d Cir. 2009), because defendant did not object to the charge, the plain-error test applies. See United States v. Marcus, 130 S. Ct. 2159, 2164 (2010) (listing requirements "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" (internal quotation marks omitted)). Here, the government concedes that the district court erred in including within the jury charge a reference to congressional findings that even local narcotics activity has a substantial effect

3

on interstate commerce. Nevertheless, in view of the evidence supporting the effect on interstate commerce of the robberies of dealers in marijuana, any such error was harmless and did not affect the defendants' substantial rights or the fairness of the proceeding. See Fed. R. Crim. P. 52(b); United States v. Needham, 604 F.3d 673, 683 n.5 (2d Cir. 2010) (discussing distinction between sufficiency and plain error review in regard to commerce element in Hobbs Act prosecutions).

    b.    Marijuana Distribution Conspiracy

Defendants contend that the evidence was insufficient to demonstrate that (1) they conspired to distribute marijuana and (2) the quantity involved exceeded 100 kilograms. In fact, co-conspirator Derrilyn Needham provided evidence of defendants' membership in a common scheme to rob drug dealers of money or drugs, the latter of which would be sold. Moreover, a jury could infer that the conspiracy intended to distribute at least 100 kilograms of marijuana, or approximately 220 pounds, from evidence that the conspirators targeted at least five different drug dealers; one target's testimony that he shipped 500–800 pounds of marijuana a month; Needham's testimony that she had previously sold 1,000 pounds for one of the targets whom she described to Davis and Gunn as a "big-time drug dealer," Trial Tr. 484; and the conspirators' discussion that yet another target was a "large scale drug dealer that dealt in weight in marijuana," id. at 464.

4

2.    Claims of Davis

a.    Admission of DNA Evidence

Davis challenges the introduction of expert DNA evidence linking him to the murder of Stephanie Laing on the ground that his counsel should have been notified before the testing process depleted the entire blood sample. While expressly disclaiming any argument that the government acted in bad faith, Davis contends that its actions violated due process and Fed. R. Crim. P. 16(a) and that he was prejudiced by the inability to test the sample independently.

Davis' due process claim is foreclosed by Arizona v. Youngblood, 488 U.S. 51, 58 (1988), which held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Nor can Davis distinguish this case from Youngblood on the ground that the government here sought to use the unpreserved evidence at trial. As the Supreme Court has explained, "the applicability of the bad-faith requirement in Youngblood depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between 'material exculpatory' and 'potentially useful' evidence." Illinois v. Fisher, 540 U.S. 544, 549 (2004) (quoting Arizona v. Youngblood, 488 U.S. at 57–58). There is no showing that the unavailable DNA evidence would have been exculpatory. It was merely potentially useful. To the extent Davis contends that the government's actions here were more suspect than in Youngblood or Fisher, he provides only potential evidence of bad faith, not a reason to discard the bad-faith requirement. Because Davis has not shown bad faith, his due process claim fails.

Davis's Rule 16(a) claim fares no better. Even assuming that any such claim was properly preserved, see United States v. Maniktala, 934 F.2d 25, 27–28 (2d Cir. 1991), and that the government's action constituted error under the rule, Davis has not shown the substantial prejudice necessary to warrant retrial, see United States v. Miller, 116 F.3d 641, 681 (2d Cir. 1997). Davis does not dispute that he had ample opportunity to review the expert report, cross-examine the government's expert, and argue to the jury that the evidence should be discounted because he had no opportunity to retest the sample. Moreover, he provides no basis to think that a retest would have led to a different result, and significant other evidence linked Davis to the murder, including the testimony of multiple witnesses and his own post-arrest statements. Under these circumstances, we cannot conclude that Davis was substantially prejudiced by admission of the DNA evidence.

b.      Motion To Sever and District Court's Limitation on Cross-Examination

Davis contends that the district court abused its discretion by denying his motion for severance. In light of the strong federal preference for joint trials, see Zafiro v. United States, 506 U.S. 534, 537 (1993), we will identify abuse of discretion only where denial of a severance caused "substantial prejudice amounting to a miscarriage of justice," United States v. O'Connor, 650 F.3d 839, 859 (2d Cir. 2011) (internal quotation marks and alterations omitted). That is not this case. Although Davis contends that he and Gunn intended to mount mutually antagonistic defenses, such defenses "are not prejudicial per se," Zafiro v. United States, 506 U.S. at 538, and Davis has not shown that "less drastic measures" than severance were insufficient to cure any prejudice, id. at 539.

6

No different conclusion is warranted by limitations the district court placed on Davis's cross-examination of Ronald Knibbs regarding Gunn's participation in uncharged robberies. Because such evidence hardly constitutes "essential exculpatory evidence" regarding Davis's role in the murder of Grey, id., the district court acted well within its broad discretion in determining both that the probative value of the evidence was outweighed by its prejudicial effect to Gunn, see United States v. Coppola, 671 F.3d 220, 244 (2d Cir. 2012), and that these limitations did not require severance. Indeed, Davis's inability to demonstrate substantial prejudice is only reinforced by other evidence overwhelmingly supporting the jury's guilty verdict.

3.    Claims of Gunn

   a.    Firearm Convictions

      i.    Aiding and Abetting the § 924(j)(1) Conviction

Gunn contends that the evidence was insufficient to prove that he aided and abetted Davis's use of a firearm during and in relation to the robbery conspiracy and the Wickham robbery, which resulted in the murder of robbery victim Gary Grey. Gunn submits that the evidence failed to show his intent to cause Grey's death.

We need not here consider whether such finding of intent was necessary to support the jury's verdict, see United States v. Wilkerson, 361 F.3d at 724 (stating that defendant must "facilitate or encourage" use of gun by confederate to be guilty of aiding and abetting § 924(j)(1) violation); United States v. Thomas, 34 F.3d 44, 48 (2d Cir. 1994) (holding that malice aforethought required for murder can be proved by showing that killing was

7

committed in commission of robbery because malice of robbery satisfies murder's malice requirement), because even if we were to decide that question in Gunn's favor, the evidence showed that Gunn (1) knew in advance that Davis planned to kill Grey and (2) facilitated the killing by handing Davis the murder weapon. See United States v. Heras, 609 F.3d 101, 107 (2d Cir. 2010) (holding that, when person with knowledge of criminal objective facilitates crime, "a jury may reasonably infer from this combination of knowledge and action that the defendant has adopted the known goal of the crime as his own").

ii.    Duplicity

Gunn seeks leave to file supplemental papers challenging his firearms convictions on the ground that each pertinent count of the indictment alleges two separate offenses: (1) the use and carrying of firearms during and in relation to a crime of violence and (2) the possession of firearms in furtherance of the crime of violence. Gunn's motion to file the papers is granted, but the challenge fails.

Although Gunn contends that his unpreserved challenge is jurisdictional, in fact, his claim is duplicity, which does not implicate jurisdiction. See United States v. Moloney, 287 F.3d 236, 240 (2d Cir. 2002). Nor can Gunn demonstrate plain error when there is a circuit split as to whether § 924(c) defines two separate offenses, see United States v. Savoires, 430 F.3d 376, 379–80 (6th Cir. 2005), or simply different means to commit a single offense, see United States v. Arreola, 467 F.3d 1153, 1161 (9th Cir. 2006), with no binding precedent by the Supreme Court or this court, see United States v. Whab, 355 F.3d 155, 158 (2d Cir. 2004) (holding that, in absence of binding precedent, "genuine dispute among the other circuits" precludes conclusion that any error is "plain").

8

Further, just as it was not plainly erroneous for the indictment to charge use, carrying, and possession as different means to commit a single offense, it was also not plainly erroneous for the district court to charge these means in the disjunctive. See United States v. Mejia, 545 F.3d 179, 207 (2d Cir. 2008) (observing that, "[w]here there are several ways to violate a criminal statute," indictment should be written in conjunctive but that conviction may be sustained "if the evidence indicates that the statute was violated in any of the ways charged" (internal quotation marks omitted)). Finally, to the extent Gunn raises an unpreserved challenge to the verdict form for conflating the means of committing a § 924(c) offense by describing Count Six as "Possession of [sic] Use of a Firearm . . . During or in Furtherance of the [charged crimes of violence]," Davis App. 243, any such error did not affect Gunn's substantial rights because the court's jury instructions clearly indicated that possession of a firearm would only be sufficient if it "played some part in furthering the crime" of violence, Trial Tr. 1813. Moreover, the jury expressly found as to Gunn that the firearm was both brandished and discharged, eliminating any concern that the conviction was based only on possession.

b.    Double Jeopardy

Gunn argues that his Hobbs Act and marijuana conspiracy convictions violate double jeopardy as successive prosecutions to his 2003 convictions based on a guilty plea. The argument fails for substantially the same reasons stated in our rejection of these claims on interlocutory appeal. See United States v. Gunn, 366 F. App'x 215 (2d Cir. 2010). While we there noted that Gunn could renew his double jeopardy challenge should the trial

9

evidence establish that the conspiracies were in fact identical, Gunn fails to point to trial evidence requiring us to depart from our initial conclusion. The trial record, like the pre-trial record, "reveals two factually distinct, independent robbery conspiracies carried out at different times, by different means, under different leadership." Id. at 219. Nor is there any basis in the trial record to disturb our conclusion that the marijuana conspiracy charged in this case, based on selling drugs stolen from drug dealers, is in any way the same as the 2003 marijuana conspiracy based on Gunn's brokering of the sale of two loads of marijuana.

      c.     <u>Sentencing</u>

Gunn contends that his Guidelines sentence of life imprisonment was substantively unreasonable because he was less culpable than Davis. The point merits little discussion. The record supports the district court's observation that Gunn has been a "one-man crime wave who has gone through life in this country causing havoc and ruin and pain." Sentencing Tr. 42. In such circumstances, a sentence of life imprisonment for Hobbs Act and firearms offenses that caused death, as well as drug trafficking, fall within "the range of permissible decisions" available to the sentencing court. <u>United States v. Cavera</u>, 550 F.3d 180, 189 (2d Cir. 2008) (<u>en banc</u>). The fact that no more severe sentence was available to address the arguably greater heinousness of Davis's crimes hardly compelled the district court to grant Gunn leniency from the heinousness of his. <u>See</u> <u>United States v. Coppola</u>, 671 F.3d at 254 (holding that weight afforded to sentencing disparity "is a matter firmly committed to the discretion of the sentencing judge" (internal quotation marks omitted)).

d.      <u>Request To Inspect Jury Records</u>

Gunn contends in his <u>pro se</u> supplemental brief that the district court erred in denying him the right to inspect "the records," Gunn Supp. Br. 32, to verify compliance with the Jury Selection and Service Act, 28 U.S.C. § 1861 <u>et seq.</u>   <u>See</u> <u>Test v. United States</u>, 420 U.S. 28, 29–30 (1975).   Where, as here, a district court provides a defendant with the district's Amended Plan for ensuring compliance with the statute, it may reasonably expect that a defendant has satisfied his concerns in the absence of a further request for disclosure.   Gunn having failed to point to any further demand after review of the Plan, we identify no error warranting remand.

4.      <u>Conclusion</u>

We have considered the parties' other arguments, including the remaining claims raised in Gunn's <u>pro se</u> supplemental brief, and we conclude that they are without merit. Gunn's motion seeking leave to file supplemental papers is GRANTED, and the judgments of conviction are AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

11