12-3777-cr
*United States v. Rubin*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2013
No. 12-3777-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

IRA RUBIN,
*Defendant-Appellant,*

DANIEL TZVETKOFF, ISAI SCHEINBERG, RAYMOND BITAR,
SCOTT TOM, BRENT BECKLEY, NELSON BURTNICK, PAUL TATE,
RYAN LANG, BRADLEY FRANZEN, CHAD ELIE, JOHN CAMPOS,
*Defendants.**

————

Appeal from the United States District Court
for the Southern District of New York.
No. 10 CR 336(10) — Lewis A. Kaplan, *Judge.*

————

ARGUED: DECEMBER 12, 2013
DECIDED: FEBRUARY 19, 2014

————

---

\* The Clerk of Court is directed to amend the caption in this case to conform to the listing of the parties above.

Before: CABRANES, HALL, AND CHIN, *Circuit Judges*.

————

Defendant-Appellant Ira Rubin appeals from the August 6, 2012 judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*), sentencing him principally to 36 months' imprisonment for: (1) conspiracy to violate the Unlawful Internet Gambling Enforcement Act of 2006 (the "UIGEA"), in violation of 18 U.S.C. § 371 and 31 U.S.C. § 5363; (2) conspiracy to commit bank fraud and wire fraud in violation of 18 U.S.C. §§ 1343, 1344, and 1349; and (3) conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(2)(A), 1956(h), and 1957(a). Rubin's principal contention on appeal is that the indictment alleges conduct exempt from prosecution under the UIGEA—a so-called "non-offense"—depriving the District Court of jurisdiction to accept his guilty plea.

We hold that, in light of *United States v. Cotton*, 535 U.S. 625 (2002), the purported defect in Rubin's indictment is non-jurisdictional in nature, and therefore could be, and was, waived by Rubin's unconditional guilty plea. Accordingly, we **AFFIRM** the judgment of the District Court.

————

TIMOTHY J. STRAUB[1] (James A. Cohen, Ian S. Weinstein, Laura Jereski, *on the brief*), Fordham University School of Law, Lincoln Square Legal Services, Inc., New York, NY, *for Ira Rubin.*

JARED LENOW (Brent S. Wible, *on the brief*), Assistant United States Attorneys, for Preet Bharara, United States Attorney, United States Attorney's Office for the Southern District of New York, NY, *for United States of America.*

————

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-Appellant Ira Rubin appeals from the judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*), sentencing him principally to 36 months' imprisonment for: (1) conspiracy to violate the Unlawful Internet Gambling Enforcement Act of 2006 (the "UIGEA"), in violation of 18 U.S.C. § 371 and 31 U.S.C. § 5363, (2) conspiracy to commit bank fraud and wire fraud, in violation of 18 U.S.C. §§ 1343, 1344, and 1349, and (3) conspiracy to launder money, in violation of 18 U.S.C. §§ 1956(a)(2)(A), 1956(h), and 1957(a). Rubin's principal contention on appeal is that the indictment alleges conduct exempted from prosecution under the UIGEA—a so-called "non-offense"—depriving the District Court of jurisdiction to accept his guilty plea.

---

[1] Timothy J. Straub, a law student, argued the case for defendant Rubin under the supervision of an attorney of Lincoln Square Legal Services, Inc. of Fordham Law School pursuant to Local Rule 46.1(e).

We hold that, in light of *United States v. Cotton*, 535 U.S. 625 (2002), the purported defect in Rubin's indictment is non-jurisdictional in nature, and therefore could be, and was, waived by Rubin's unconditional guilty plea.

## BACKGROUND

On March 10, 2011 the Government filed a nine-count Superseding Indictment (the "Indictment"), Count One charging Rubin and others with conspiring to violate the UIGEA, 31 U.S.C. §§ 5361–5367, in violation of 18 U.S.C. § 371.[2] Section 5363 of the UIGEA makes it a federal offense for gambling businesses to "knowingly accept" most forms of payment "in connection with the participation of another person in unlawful Internet gambling." *See* 31 U.S.C. § 5363. The Indictment alleged that from 2006 to 2011, the three leading internet poker companies doing business in the United States (the "Internet Poker Companies") violated this prohibition by deceiving United States banks and financial institutions into processing billions of dollars in payments for illegal gambling activity on their sites.

The Internet Poker Companies accomplished the alleged deception by hiring third-party payment processors, such as Rubin, to disguise payments from United States gamblers as payments to hundreds of purportedly legitimate, but non-existent, online merchants and other non-gambling businesses. In mid-2008, for instance, Rubin and others allegedly created dozens of phony e-commerce websites purporting to sell clothing, jewelry, and sporting

---

[2] Under 18 U.S.C. § 371, it is a crime for "two or more persons [to] conspire either to commit any offense against the United States . . . , and one or more of such persons [to] do any act to effect the object of the conspiracy."

equipment, which Rubin knew would be used to conceal gambling transactions. Rubin then opened bank accounts to process transactions on behalf of the Internet Poker Companies by using the names of these phony companies and falsely claiming to the banks that these accounts would be used to process transactions for legitimate e-commerce merchants. The Indictment alleged that Rubin thereafter disguised gambling transactions as payments to dozens of these phony web stores, payments to a medical billing company, and payments related to payroll and marketing expenses.

On January 17, 2012, Rubin pleaded guilty to conspiracy to violate the UIGEA as alleged in Count One, pursuant to an unconditional, written plea agreement with the Government. Rubin also pleaded guilty to Counts Eight and Nine of the Indictment, charging, respectively, conspiracy to commit bank fraud and wire fraud and conspiracy to launder money. As set forth in the plea agreement, the Guidelines range for the offenses to which Rubin pleaded guilty was 18 to 24 months' imprisonment. On July 26, 2012, the District Court sentenced Rubin principally to an aggregate term of 36 months' imprisonment, an upward variance. This timely appeal followed.

## DISCUSSION

### I

Rubin's principal argument on appeal is that he was convicted of a "non-offense" when he pleaded guilty to Count One. Rubin was prosecuted for conspiring to violate Section 5363 of the UIGEA, which applies to anyone "engaged in the business of betting or wagering." *See* 31 U.S.C. § 5363. The statute does not directly define the phrase "business of betting or wagering," but states that it "*does*

*not* include the activities of a financial transaction provider," *id.* § 5362(2) (emphasis supplied), such as the activities of those entities or individuals engaged in the business of transferring or transmitting credit or funds, *see id.* § 5362(4). A financial transaction provider may be charged under Section 5363, however, if such individual has, among other requirements, "actual knowledge and control of bets and wagers." *Id.* § 5367.

Rubin contends that Count One charged a non-offense because it alleged that he did nothing more than handle gambling funds—*i.e.*, engage in "the activities of a financial transaction provider"—which are expressly excluded from the "business of betting or wagering" and thus generally exempted from prosecution under the UIGEA. According to Rubin, in order to charge him as a financial transaction provider, Count One needed to allege that he had actual knowledge and control of bets and wagers. The Government responds that Rubin did in fact conspire in the business of betting or wagering within the meaning of the proscription of Section 5363 because his conduct was *not* limited to the activities of a "financial transaction provider," understood as the routine processing of financial transactions between gamblers and internet gambling companies.

We need not resolve this dispute because, even assuming *arguendo* that Count One alleged a so-called "non-offense," Rubin's unconditional guilty plea precludes his argument on appeal. Generally, "in order to reserve an issue for appeal after a guilty plea, a defendant must obtain the approval of the court and the consent of the government, and he must reserve the right to appeal in writing." *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (citing Fed. R. Crim. P. 11(a)(2)). Rubin did not reserve a right to appeal here. Absent such a reservation, "a defendant who knowingly and

voluntarily enters a guilty plea waives *all non-jurisdictional defects* in the prior proceedings." *United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) (emphasis supplied); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").[3]

## II

Rubin attempts to circumvent this bar by contending that the Indictment's supposed failure to state an offense under the UIGEA deprived the District Court of subject-matter jurisdiction[4] to enter his plea of guilty to Count One, and that defects in subject-matter jurisdiction "can never be forfeited or waived," *Cotton*, 535 U.S. at 630. We disagree that the purported defect in the indictment affects the Court's subject-matter jurisdiction.

The Supreme Court most recently addressed the effect of indictment defects on a district court's jurisdiction in *United States v.*

---

[3] The quoted passages from *Garcia* and *Tollett* are not absolute, inasmuch as the Supreme Court itself has recognized narrow exceptions for two constitutional claims—due process claims for vindictive prosecution, *see Blackledge v. Perry*, 417 U.S. 21, 30-31 (1974), and double jeopardy claims that are evident from the face of the indictment, *see Menna v. New York*, 423 U.S. 61, 62 n.2 (1975). Rubin does not argue that either exception is applicable here.

[4] Article III confers upon the federal courts subject-matter jurisdiction over all cases arising under the laws of the United States. Const. art. III, § 2, cl. 1. By statute, Congress has conferred upon the "district courts of the United States . . . original jurisdiction . . . of all *offenses against the laws of the United States*." *See* 18 U.S.C. § 3231 (emphasis supplied).

*Cotton*.[5]  Following the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000)—which held that, in federal prosecutions, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be charged in the indictment, *id.* at 476— the Fourth Circuit *sua sponte* vacated the *Cotton* defendants' sentences on the basis that "an indictment setting forth all the essential elements of an offense," such as drug quantities resulting in an enhanced penalty, "is both mandatory and jurisdictional." *United States v. Cotton*, 261 F.3d 397, 404 (4th Cir. 2001).

The Supreme Court reversed.  It clarified that "jurisdiction" refers to "'the courts' statutory or constitutional *power* to adjudicate the case.'"  *Cotton*, 535 U.S. at 631 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998)).  The Court then held that "defects in an indictment do not deprive a court of its power to adjudicate a case," *id.* at 630, and that the question whether "'the indictment does not charge a crime against the United States goes only to the merits of the case,'" *id*. at 630-31 (quoting *Lamar v. United States*, 240 U.S. 60, 65 (1916)).

Rubin argues that *Cotton* stands for the limited proposition that indictment omissions, such as a missing element or an inadequate factual basis, do not deprive a district court of subject-

---

[5] The indictment in *Cotton* charged the defendants with a drug offense involving a "detectable amount" of cocaine or cocaine base under 21 U.S.C. § 841(b)(1)(C), which, at that time, established "a term of imprisonment of not more than 20 years."  535 U.S. at 628.  The district court in *Cotton* did not sentence the defendants under that provision, however.  "Consistent with the practice in federal courts at the time," the district court made a finding of drug quantity at sentencing that triggered enhanced penalties under 21 U.S.C. § 841(b)(1)(A), which prescribed "a term of imprisonment which may not be . . . more than life" for drug offenses involving at least 50 grams of cocaine base.  *Cotton*, 535 U.S. at 628.  The district court then sentenced the defendants principally to terms of imprisonment in excess of the 20-year statutory limit provided in 21 U.S.C. § 841(b)(1)(C).  *Cotton*, 535 U.S. at 628.

matter jurisdiction, and that his appeal rests on a separate basis—namely, that the conduct as charged in Count One was simply not a crime under the UIGEA. We do not read *Cotton* so narrowly. The Court did not speak merely of omissions; rather, it invoked the broader concept of "indictment defects." *See id.* at 630 ("*[D]efects in an indictment* do not deprive a court of its power to adjudicate a case." (emphasis supplied)); *id.* at 631 ("[T]hat the *indictment is defective* does not affect the jurisdiction of the trial court to determine the case presented by the indictment." (emphasis supplied) (internal quotations omitted)); *id.* ("[T]his Court some time ago departed from [the] view that *indictment defects* are 'jurisdictional.'" (emphasis supplied)); *id.* ("Insofar as [*Ex parte Bain*, 121 U.S. 1 (1887)] held that a *defective indictment* deprives a court of jurisdiction, *Bain* is overruled." (emphasis supplied)).

The two cases upon which the Supreme Court relied in *Cotton*—*Lamar v. United States*, 240 U.S. 60 (1916), and *United States v. Williams*, 341 U.S. 58 (1951)—confirm that challenges to indictments on the basis that the alleged conduct does not constitute an offense under the charged statute are also non-jurisdictional challenges.

In *Lamar*, a jury convicted the defendant, who had impersonated a U.S. Representative, of falsely pretending to be a U.S. officer. *Lamar*, 240 U.S. at 64. The defendant argued on appeal that the district court lacked jurisdiction because a Congressman was not "an officer of the United States" as alleged in the indictment—*i.e.*, the indictment charged a non-offense. *Id.* Justice Holmes, writing for the Court, rejected this argument, noting that "[j]urisdiction is a matter of power and covers wrong as well as right decisions," and that "[t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case." *Id.* at 64–65.

In *Williams*, the Court rejected a similar argument. The district court there dismissed the defendants' perjury charges under the theory that the court presiding over the conspiracy trial in which the perjury had allegedly occurred had "no jurisdiction"—and hence was not a competent tribunal as required by the perjury statute— because the conspiracy alleged in the earlier indictment was not proscribed by the charged conspiracy statute. *Williams*, 341 U.S. at 59–61, 65. The Supreme Court reversed the jurisdictional holding, stating that the court in the conspiracy case "had jurisdiction of the subject matter, to wit, an alleged violation of a federal conspiracy statute, and, of course, of the persons charged." *Id.* at 66. That a higher court ultimately held the indictment defective did "not affect the jurisdiction of the trial court to determine the case presented by the indictment." *Id.* The Court concluded that, "[t]hough the trial court or an appellate court may conclude that the statute is wholly unconstitutional, or that the facts stated in the indictment do not constitute a crime or are not proven, [the court] has proceeded with jurisdiction . . . ." *Id.* at 68–69. In sum, the precedents of the Supreme Court make clear that a district court has "jurisdiction" even where an indictment alleges conduct that does not state an offense under the statute purportedly violated.

Sister Courts of Appeals that have considered the issue have rejected similar arguments that the failure to state an offense under the charged statute deprives a district court of jurisdiction.[6] In

---

[6] No Second Circuit case has previously addressed this issue squarely in the wake of *Cotton*. In *United States v. Moloney*, 287 F.3d 236 (2d Cir. 2002), the Court held that "a claim that the indictment charges a non-offense implicates the jurisdiction of the federal courts." *Id.* at 240. Yet *Moloney* was decided on April 9, 2002, roughly a month before the Supreme Court decided *Cotton*. More recently, in *United States v. Kumar*, 617 F.3d 612 (2d Cir. 2010), in reviewing whether an indictment sufficiently alleged an offense, we stated that, "[t]o challenge the court's jurisdiction, the defendant who has

*United States v. De Vaughn*, 694 F.3d 1141 (10th Cir. 2012), the Court of Appeals held that, by unconditionally pleading guilty, the defendant had waived his argument that threatening letters alleged in the charging documents were not, as a matter of law, "threats" prohibited by 18 U.S.C. § 876(c).[7] *Id.* at 1143–44, 1148. In *Vanwinkle v. United States*, 645 F.3d 365 (6th Cir. 2011), the Court of Appeals held that the district court had jurisdiction to accept a defendant's guilty plea to the unauthorized use of an access device, notwithstanding the defendant's claim on appeal that the device, as alleged in the indictment, did not constitute an "access device" within the meaning of 18 U.S.C. § 1029(a).[8] *Id.* at 368–69. Finally, in *United States v. Delgado-Garcia*, 374 F.3d 1337 (D.C. Cir. 2004), Judge Sentelle, writing for himself, asserted that the defendants had waived their argument that the charged statute did not apply extraterritorially, as alleged in the indictment, by unconditionally pleading guilty. *Id.* at 1340–41.[9]

---

pleaded guilty must establish that the face of the indictment discloses that the count or counts to which he pleaded guilty failed to charge a federal offense." *Id.* at 620 (internal quotations omitted). However, *Kumar* did not purport to undertake a jurisdictional inquiry. Moreover, *Kumar* relied on *Hayle v. United States*, 815 F.2d 879 (2d Cir. 1987), for the proposition that, where an "indictment alleges all of the statutory elements of a federal offense and the defendant's contention is that in fact certain of those elements are lacking, the challenge goes to the merits of the prosecution." *Id.* at 882. In the instant case, as in *Hayle*, Count One alleged all of the statutory elements of a conspiracy to violate Section 5363 of the UIGEA. Rubin's contention is that all the elements of the charged offense are not *satisfied* because the allegations establish that he only acted as a "financial transaction provider."

[7] 18 U.S.C. § 876(c) makes it an offense to knowingly mail any communication "containing any threat to kidnap any person or any threat to injure the person of the addressee or of another."

[8] 18 U.S.C. § 1029(a) generally prohibits fraud and related activity in connection with the production, use, and trafficking of counterfeit or unauthorized access devices.

[9] The Third Circuit charted an alternative course in *United States v. Hedaithy*, 392 F.3d 580 (3d Cir. 2004), holding that a defendant's challenge to the indictment does not concern any jurisdictional grounds, but could be heard for the first time on appeal based

In order to invoke a district court's jurisdiction, an indictment need only allege that a defendant committed a federal criminal offense at a stated time and place in terms plainly tracking the language of the relevant statute. *See United States v. Frias*, 521 F.3d 229, 235–36 (2d Cir. 2008) (holding that an indictment that "plainly tracks the language of the statute and states the time and place of the alleged [crime]" is "sufficient to invoke the district court's jurisdiction"); *see also United States v. Jacquez-Beltran*, 326 F.3d 661, 662 n.1 (5th Cir. 2003) ("To confer subject matter jurisdiction upon a federal court, an indictment need only charge a defendant with an offense against the United States in language similar to that used by the relevant statute."); *United States v. González*, 311 F.3d 440, 442 (1st Cir. 2002) ("[A] federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges . . . that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes."). When such jurisdiction is established, a district court has authority to decide all other issues presented within the framework of the case, including whether to accept a guilty plea.

In this case, Count One of the Indictment invoked the District Court's jurisdiction by charging Rubin with an offense against the United States—conspiring to violate the UIGEA, in violation of 18 U.S.C. § 371 and 31 U.S.C. § 5363—at a specified time and place and

---

on language in Federal Rule of Criminal Procedure 12(b)(3)(B). *Id.* at 589; *see also* Fed. R. Crim. P. 12(b)(3)(B) (stating that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense"). Rubin briefly mentions this Rule in his opening brief, but only for the proposition that *jurisdictional challenges* to an indictment may be raised at any time, including for the first time on appeal. Accordingly, Rubin has waived any argument that Rule 12(b)(3)(B) allows him to challenge for the first time on appeal that the Indictment fails to state an offense—a *non-jurisdictional challenge* to the prosecution.

in terms tracking the language of the relevant statutes. Whether Rubin's alleged conduct amounted to nothing more than the "activities of a financial transaction provider" concerns the merits of the case, not the District Court's jurisdiction over the action. Accordingly, in pleading guilty unconditionally, Rubin waived his challenge that the Indictment failed to state an offense.

## III

Rubin also challenges the reasonableness of his sentence on procedural and substantive grounds. We review his claim of procedural unreasonableness for plain error because Rubin failed to raise this claim below. *United States v. Cassesse*, 685 F.3d 186, 188 (2d Cir. 2012) (reviewing for plain error an unpreserved claim that the district court inadequately explained its reasons for a sentence); *cf. United States v. Villafuerte*, 502 F.3d 204, 208 (2d Cir. 2007) (holding that "rigorous plain error analysis" applies to unpreserved claims of procedural sentencing error under 18 U.S.C. § 3553(a) and (c)). Rubin argues that the District Court failed to justify adequately, except in conclusory terms, the upward variance.

At sentencing, the District Court explained the upward variance by stating that the nature of the offense was particularly reprehensible, and that the Pre-Sentence Investigation Report prepared by the United States Probation Office, and adopted by the Court without objection, had revealed a strong likelihood of recidivism in light of Rubin's extensive criminal past and string of fraudulent conduct over the course of more than 30 years. The District Court specifically found that the offenses to which Rubin pleaded guilty were "brazen, quite deliberate, and deceptive," and that Rubin was "an unreformed con man and fraudster" who would "cook up some new scheme" upon his release from incarceration.

This explanation was not inadequate, or error, much less plain error. *See United States v. Fairclough*, 439 F.3d 76, 81 (2d Cir. 2006) ("upward departure from the Guidelines range might have been warranted on the basis that the range under-represented [defendant's] past criminal conduct and likelihood of recidivism").

In examining the substantive reasonableness of a sentence, we review the length of the sentence imposed to determine whether it "cannot be located within the range of permissible decisions." *United States v. Watkins*, 667 F.3d 254, 261 (2d Cir. 2012) (internal quotations omitted). Rubin argues that his sentence is disproportionate to the minor role he played in the scheme as compared to his co-conspirators. He notes that the sentence of 36 months' imprisonment is twice as long as that imposed on any other co-conspirator, and he asserts that he was merely a payment processor in contrast to those actively involved in the gambling enterprise.

We agree with the District Court that Rubin was not similarly situated to his co-conspirators. Rubin's personal characteristics were considerably different from those of his co-defendants, and his co-defendants did not have lengthy criminal records and a corresponding high likelihood of recidivism. With regard to Rubin's role in the offense, although he did not run a gambling website himself, Rubin made it possible for the Internet Poker Companies to operate in the United States by disguising gambling payments as legitimate transactions so banks would not block them. Rubin also played a central role in the fraud and money laundering conspiracies charged in Counts Eight and Nine. Accordingly, the District Court acted well within its discretion in imposing an above-guideline sentence of 36 months' imprisonment.

**CONCLUSION**

To summarize, we hold that:

(1) In light of *United States v. Cotton*, 535 U.S. 625 (2002), the question whether Rubin's conduct constitutes a conspiracy to violate the UIGEA is a non-jurisdictional challenge to the prosecution.  Count One of the Indictment sufficiently invoked the District Court's jurisdiction by alleging that Rubin had committed a federal criminal offense at a stated time and place in terms plainly tracking the language of the relevant statute.

(2) Rubin's unconditional guilty plea to Count One of the Indictment precludes his argument on appeal that he was convicted of a so-called "non-offense" under the UIGEA.

(3) Rubin's sentence was neither substantively nor procedurally unreasonable.

For the reasons stated above, we **AFFIRM** the August 6, 2012 judgment of the District Court.