******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

MULLINS, J., with whom KELLER, J., joins, concurring in the judgment. I agree with the majority that we should formally recognize a distinction between two types of duplicitous charging: (1) the charging of distinct crimes that violate multiple statutory provisions or subsections within a single count (which implicates what the majority terms "unanimity as to elements"), and (2) the charging of multiple instances of the same crime within a single count (which implicates what the majority terms "unanimity as to instances"). See part I B of the majority opinion. I also agree with the majority's ultimate conclusion that the charges in this case were not impermissibly duplicitous and, therefore, that the conviction of the defendant, Douglas C., Jr., on multiple counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2)[1] should be affirmed.

I part ways with the majority with respect to its statement of the law that governs duplicity/unanimity as to multiple instances of the same offense; see id.; and its application of that law to the present case. See part II of the majority opinion. Specifically, I believe that this court should adopt the more flexible, case-by-case framework used by the United States Court of Appeals for the Second Circuit, among other courts. We typically defer to that court's interpretations of federal law, and there are compelling reasons—both principled and practical—to do so with respect to the law of duplicity and unanimity. I believe that the majority's approach will lead to the needless repetitive charging of criminal defendants and make it virtually impossible to prosecute some of the most heinous crimes, especially those involving the sexual abuse of young children.

I

As I understand it, the majority adopts a two part test, with one significant exception, to assess challenges to a criminal prosecution in which a single count charges the defendant with violating a single statute in multiple, separate instances. First, we look to see whether there are multiple instances of conduct charged in one count, where each instance could establish a separate violation of the same statute based on the evidence submitted at trial. If so, the count is presumptively duplicitous. There is an exception, however, "when the multiple instances of conduct constitute 'a continuing course of conduct, during a discrete period of time . . . .' " Part I B of the majority opinion. Course of conduct charging is not duplicitous, but only so long as the legislature specifically contemplated that the statute at issue could be charged as a course of conduct crime. Second, in the absence of a bill of particulars or a specific unanimity instruction, all duplicitous charges violate a defendant's constitutional right to jury unanim-

ity, but the court then must consider whether that constitutional violation is harmless.

I readily acknowledge that this is *one* permissible approach to the issue of duplicitous charging. As I will discuss, a few of the federal courts of appeals, as well as a handful of our sister state courts, have adopted similar frameworks. And it is not without its merits, primary among them that it purports to be relatively simple and straightforward to apply. But see part II of this opinion.

I disagree, however, with the majority's contention that the "federal courts agree" with its per se ban on duplicitous charging. Part I B of the majority opinion. The very cases on which the majority relies expressly acknowledge that other courts of appeals apply a different framework,[2] and the majority concedes that the Second Circuit approach, among others, differs. See footnotes 15 and 18 of the majority opinion.

Much of the difference between my view and the majority's view centers on how to treat course of conduct charging. The framework I would have us adopt when assessing whether charging multiple instances in a single count is permissible or impermissible is the following four step approach: first, pursuant to General Statutes § 1-2z, if the statute at issue either expressly permits or expressly bars course of conduct charging, or if there are other *clear* indicia of legislative intent, then courts must defer to the legislative will. Second, if the statute at issue is silent as to course of conduct charging, and there are no other clear indicia of legislative intent, as will most often be the case, then the prosecutor has the discretion to charge repeated violations of the statute as individual incidents or as a single course of conduct. Third, notwithstanding the prosecutor's charging decision, the trial court should determine whether such charging (1) would be unreasonable or unfair under the circumstances or (2) would otherwise violate the defendant's fifth and sixth amendment (and corresponding state constitutional) rights to notice, to present a defense, to a unanimous jury verdict, and to not twice be placed in jeopardy for the same offense, among others. Such determinations must be made on a case-by-case basis. If, at trial, the judge concludes that there is potential for unfairness or a constitutional violation, then the judge should not permit course of conduct charging and should either order that the charges be separated or give an instruction to the jury that it must be unanimous as to at least one specific incident.[3] Fourth, if an appellate court, on review, concludes that the trial court should not have permitted course of conduct charging, either because the defendant's conduct cannot fairly be characterized as a single scheme or pattern under the statute at issue, or because the constitutional rights that underlie the rule against duplicity were not adequately secured, then the trial

court's determination is subject to harmless error analysis.

In other words, then, the two primary differences between my approach and the majority's approach are these. First, the majority agrees with those courts that have concluded that only the *legislature* can sanction course of conduct charging, and it must indicate its intent to do so. Otherwise, course of conduct charging is constitutionally impermissible. By contrast, I agree with those courts that have held that, unless otherwise specified, the legislature presumptively leaves to the *prosecutor* the decision of whether course of conduct charging is appropriate in a given case. This prosecutorial discretion is not unbridled. It is subject to the discretionary judgment of the trial court as to whether course of conduct charging is fair and reasonable on the facts of a particular case.[4] The discretion of the prosecutor is cabined not only by the defendant's right to a unanimous jury, but also by the other constitutional considerations, such as due process concerns, that underlie the prohibition against duplicity.

At the same time, it is important to point out that prosecutorial discretion in charging is deeply entrenched in our state's jurisprudence. Connecticut has a long history of permitting prosecutors, who are constitutional officers with broad discretionary authority over charging,[5] to make these sorts of decisions.[6] The discretion *not* to charge multiple, substantially similar offenses as separate crimes, thereby exposing the defendant to multifold punishment, often redounds to the benefit of criminal defendants: their potential sentencing exposure is not as great, and the jury sees only one charged crime, rather than multiple, separate charges repeatedly alleging the same violation and thus suggesting that the defendant must be guilty if there are so many charges. Under the majority's new rule, in the vast majority of cases, when the legislature has neither sanctioned nor prohibited course of conduct charging, prosecutors would be stripped of this traditional authority.

This leads to the second primary difference between the majority's approach and the Second Circuit approach that I would adopt. Under the majority's approach, once it is determined that the state has charged the defendant with violating a single statute on multiple occasions and that each violation could have been charged separately, then the charge is duplicitous and, necessarily, a violation of the defendant's constitutional rights. That is, unless the legislature has signaled its assent to charging violations of a criminal statute as a course of conduct, such charging, in the absence of a bill of particulars or a specific unanimity instruction, necessarily offends the sixth amendment to the federal constitution and/or the corresponding provision of the state constitution. The majority then

would conduct a harmless error analysis to determine whether the constitutional violation was harmless beyond a reasonable doubt. By contrast, if the legislature *has* sanctioned course of conduct charging, then the prosecutor can permissibly so charge, and the majority's approach appears to stop there—because there is no constitutional violation to such a charge— and there is no further evaluation of whether the defendant's right to a unanimous jury might nevertheless be infringed by charging multiple violations of a single statute in one count. Put differently, application of the majority's adopted test not only would prohibit course of conduct charging in cases in which it may be warranted, but also may permit it in cases in which it could be unconstitutional.

The approach I favor does not reach a constitutional violation—or discount the possibility of one—as quickly. The approach I favor recognizes, as I discuss in part I A of this opinion, that there is an important distinction between a duplicitous *charge*, which potentially violates the rules of criminal procedure, and a *conviction* that violates the defendant's rights to due process or to a unanimous jury verdict. As many of the federal courts and our sister state courts have recognized, not all duplicitous charges run afoul of the constitution. The duplicity determination is the beginning of the determination of whether a criminal defendant's constitutional rights have been violated, not the end.

In the present case, I would affirm the defendant's conviction because charging each alleged crime as an ongoing course of conduct involved a reasonable exercise of prosecutorial discretion that did not infringe on the defendant's constitutional rights, and not because the legislature specifically identified § 53-21 (a) (2) as a course of conduct crime. It did not. See part II of this opinion.

A

There is one point that I should make clear at the outset because it is key to understanding all of the varied case law about these issues. That is, there is an important conceptual distinction between (1) duplicitous charging in an indictment or information and (2) the constitutional right to a unanimous jury verdict. The prohibition against duplicitous charging, which arose in the civil context at common law; see part I B of this opinion; rests in the rules of criminal procedure: Practice Book § 36-21 in Connecticut,[7] rule 8 (a) of the Federal Rules of Criminal Procedure in the federal courts,[8] and other rules in other states.[9] These rules of practice differ from one jurisdiction to the next, which means that cases construing and applying one jurisdiction's rules are not necessarily directly applicable to another jurisdiction.

The prohibition embodied in these rules, however,

*is* grounded in several constitutional protections, one of which is the defendant's right to a unanimous jury verdict. This right is principally secured by the sixth amendment to the federal constitution, as well as by article first, §§ 8 and 19, of the Connecticut constitution.[10] As I will discuss, different federal courts treat differently the relationship between the rule against duplicitous charging and the sixth (and other) amendment rights that underlie that rule. Some deem any violation of the procedural rules against duplicitous charging also to be a per se constitutional violation but then hold that violation harmless if, in fact, the violation was cured by the trial court's giving a specific unanimity instruction or if such an instruction is deemed unnecessary.

Other courts, though, follow the conceptually distinct approach that I favor. They treat violations of the rules of practice and of the constitution as different—albeit related—matters.[11] The cure for a violation of the rules against duplicitous pleading is, typically, reformulation of the indictment, a bill of particulars, and/or appropriate jury instructions, not reversal of the conviction.[12] A sixth amendment violation, by contrast, will warrant reversal if it is not deemed harmless.

### B

Before I discuss the Second Circuit approach, which I would adopt, a brief history of these issues may be instructive. The rules against duplicity (pleading multiple grounds or offenses in the same count) and multiplicity (pleading the same ground or offense in multiple counts) originated at English common law, in the civil pleading context. See E. Coke, First Part of the Institutes of the Lawes of England (1628) p. 304. An exception to Coke's rule against duplicity came to be recognized for continuing torts, such as ongoing trespass; for those claims, the plaintiff could "[lay] the action with a continuando" (another way of saying continuous course), alleging in a single count that, for example, the defendant had trespassed continually—on a particular date and on "divers days" thereafter. 3 W. Blackstone, Commentaries on the Laws of England (1768) p. 212. In the nineteenth century, the new American states were divided over how to apply these common-law civil rules to criminal prosecutions. Some, including Connecticut, allowed the state to lay a broad range of vice-type and scheme-type crimes with a continuando, charging repeated violations as one continuing offense or continuing course of conduct, whereas other states rejected the practice.[13]

Early on, Connecticut courts recognized that not all crimes are either exclusively individual act or course of conduct crimes. Some crimes that were not inherently continuing offenses could be charged either as individual acts or with a continuando. See, e.g., *State* v. *Cook*, 75 Conn. 267, 268, 53 A. 589 (1902) (prosecutor charged

cruelty to animals both as individual infraction and with continuando covering three month period). Child sexual assault is one common example of a crime the charging of which traditionally has been subject to prosecutorial discretion, both before and after the enactment of § 1-2z. In fact, Connecticut prosecutors have consistently charged child sexual assault, along with risk of injury to a child, as a continuing offense. This has been equally true when the victims provided only generic testimony as to an ongoing, undifferentiated pattern of abuse, when they testified in detail as to a number of specific assaults that were jointly charged in a single count, and when the testimony included a blend of the specific and the generic.[14]

C

With this history in mind, I turn to the law of the Second Circuit on duplicity and course of conduct charging. Although the groundwork was laid in earlier cases, the Second Circuit's approach to duplicitous charging generally is traced to Judge Jon O. Newman's majority opinion in *United States* v. *Margiotta*, 646 F.2d 729 (2d Cir. 1981). In *Margiotta*, the government charged the defendant with sending " 'countless' " mailings, each in violation of the federal mail fraud statute, 18 U.S.C. § 1341 (1976), over a ten year period. Id., 730–31. The trial court declined to allow the government to charge multiple violations in a single count, and the Second Circuit permitted an interlocutory appeal. See id., 731. The Second Circuit agreed with the defendant that each mailing would have provided a "discrete basis for the imposition of criminal liability"; (internal quotation marks omitted) id., 732; but saw nothing improper with the government instead charging the mailings as one course of conduct when "the essence of the alleged wrong [was] the single scheme to defraud . . . ." Id., 733. In reaching this conclusion, the court never quoted the language of the statute; nor did it suggest that Congress intended the statute to be charged as a course of conduct crime. Rather, it relied on the general principle that, "[i]f the doctrine of duplicity is to be more than an exercise in mere formalism, it must be invoked only when an indictment affects the policy considerations that underlie that doctrine." (Internal quotation marks omitted.) Id., 732–33.[15]

The Second Circuit acknowledged that some courts, such as the United States Court of Appeals for the Fifth Circuit, follow the approach that any acts that qualify as separate offenses must be charged in separate counts, unless the legislature has authorized otherwise. See id., 733. This is the approach that the majority has adopted in the present case. The Second Circuit rejected that approach, however, concluding that "a single count of an indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses . . .

but only when the failure to do so risks unfairness to the defendant." (Citation omitted.) Id.

The Second Circuit court in *Margiotta* further concluded that there was no risk of unfairness to the defendant in that case; quite the contrary. Charging all of the illegal mailings in one count, rather than in dozens of separate counts, benefitted the defendant by "limiting the maximum penalties [the] defendant [could] face if convicted of mail fraud and also [by] avoid[ing] the unfairness of portraying the defendant to the jury as the perpetrator of [fifty] crimes." Id.; see also, e.g., *United States* v. *Walker*, 254 Fed. Appx. 60, 62 (2d Cir. 2007) ("[t]he law does not . . . absolutely proscribe duplicitous pleading because it recognizes that such an inflexible rule could inure to defendants' detriment by requir[-ing] exposure to cumulative punishments" (internal quotation marks omitted)); *State* v. *Stanley*, 161 Conn. App. 10, 12–14, 125 A.3d 1078 (2015) (defendant was convicted of 100 counts of criminal violation of protective order and, accordingly, sentenced to eighteen years of imprisonment for making repeated phone calls to former romantic partner), cert. denied, 320 Conn. 918, 131 A.3d 1154 (2016). Finally, the court suggested that it would not be error to give the jury an instruction charging only that the jury must unanimously find that the defendant mailed at least one item in furtherance of his scheme to defraud, although the Second Circuit observed that it would not be improper for the trial court to submit a special interrogatory to identify one or more specific mailings. See *United States* v. *Margiotta*, supra, 646 F.2d 733.

1

In decisions both prior and subsequent to *Margiotta*, the Second Circuit has clarified several aspects of its duplicitous charging jurisprudence. First, in *Margiotta*, the essence of the alleged crime was the defendant's insurance fraud scheme, and the multiple mailings were relevant mostly because they provided the basis for federal jurisdiction. See id. Subsequent decisions have made clear that *Margiotta* applies even when the distinct violations "are an inherent part of the alleged wrong" and not merely jurisdictional prerequisites. (Internal quotation marks omitted.) *United States* v. *Upton*, 856 F. Supp. 727, 741–42 (E.D.N.Y. 1994).

Second, it is now clear that, unless the legislature clearly directs otherwise, whether violations of a given criminal statute may be charged as a course of conduct in a given case is a matter of prosecutorial discretion.[16] The Second Circuit and the district courts in that circuit have permitted duplicitous charging under a broad array of federal criminal statutes that do not facially contemplate course of conduct charging, and, in some instances, they have done so without any discussion[17] of whether Congress intended to permit such charging under the statute.[18] These courts have emphasized that,

"under the law of [the Second] Circuit, acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme"; (internal quotation marks omitted) *United States* v. *Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992); and that the decision whether to so charge is a matter of prosecutorial discretion.[19] In *United States* v. *Moloney*, 287 F.3d 236 (2d Cir.), cert. denied, 537 U.S. 951, 123 S. Ct. 416, 154 L. Ed. 2d 297 (2002), the Second Circuit specifically rejected the view that an indictment that charges a continuing offense not expressly prohibited by Congress fails to charge a cognizable offense. See id., 240–41. The court concluded, rather, that violations of *any* criminal statute can be charged as a course of conduct, in the prosecutor's discretion, so long as the conduct reasonably can be characterized as part of a common scheme. See id., 240 ("[i]n response to certain claims of duplicity, [the Second] [C]ircuit has adopted *a general rule* that criminal charges may aggregate multiple individual actions that otherwise could be charged as discrete offenses as long as all of the actions are part of a single scheme" (emphasis added; internal quotation marks omitted)); see also, e.g., S. Levy, Federal Money Laundering Regulation: Banking, Corporate & Securities Compliance (Supp. 2022) § 20.05, p. 20-16 (Second Circuit follows "[u]nified [s]cheme [r]ule"). For this reason, "courts in [the Second] Circuit have repeatedly denied motions to dismiss a count as duplicitous." *United States* v. *Ohle*, 678 F. Supp. 2d 215, 222 (S.D.N.Y. 2010).

Of particular relevance to the present appeal, district courts in the Second Circuit have applied these principles to indictments alleging the sexual abuse of minors, allowing prosecutors to charge a course of conduct even when there was no indication that Congress specifically intended the statutes at issue to be charged in that manner. For example, in *United States* v. *Vickers*, Docket No. 13-CR-128-A, 2014 WL 1838255 (W.D.N.Y. May 8, 2014), the court upheld the validity of a single count indictment charging the defendant, a truck driver, with having transported a minor across state lines to engage in illegal sexual activity on multiple dates between 2000 and 2004, in violation of 18 U.S.C. § 2423 (a). See id., *1–2, *7. The victim told investigators that the defendant had taken him on approximately fifty such trips, for only a few of which could he provide details of the dates, locations, and abuse involved. See id., *2, *4. Applying *Margiotta* and its progeny, the court in *Vickers* concluded that the indictment was not impermissibly duplicitous because the government alleged a continuing scheme to transport the victim for illicit sexual purposes. Id., *7.

Third, the Second Circuit has elucidated the process by which courts should determine, on a case-by-case basis, whether duplicitous course of conduct charging

represents an abuse of prosecutorial discretion. If a trial court determines that the series of offenses in question can fairly and reasonably be characterized as a cohesive scheme or single course of conduct; see footnote 4 and part I C 2 of this opinion; the court must then consider whether charging the offenses in a single count comports with due process. In *United States* v. *Olmeda*, 461 F.3d 271 (2d Cir. 2006), the Second Circuit explained that "[d]uplicitous pleading . . . is not presumptively invalid" but, rather, is objectionable "only when [the] challenged indictment affects [the] doctrine's underlying policy concerns . . . ." Id., 281. The constitutional/policy considerations that speak to whether course of conduct charging is appropriate include "(1) avoiding [the] uncertainty of [a] general guilty verdict by concealing [a] finding of guilty as to one crime and not guilty as to [an]other, (2) avoiding [the] risk that jurors may not have been unanimous as to any one of the crimes charged, (3) assuring [the] defendant adequate notice of charged crimes, (4) providing [a] basis for appropriate sentencing, and (5) providing adequate protection against double jeopardy in subsequent prosecution[s] . . . ." Id.

### 2

There is one ambiguity in the Second Circuit approach that warrants special attention. That court has, in different instances, given the seemingly paradoxical guidance that (1) course of conduct charging should be permitted by the trial court only when it would not offend the sixth amendment right to a unanimous jury verdict; see, e.g., id.; but (2) when the prosecutor charges a course of conduct, jury unanimity is not a concern because the jury need only agree that the defendant has committed the charged crime, which is the course of conduct. See, e.g., *United States* v. *Walker*, supra, 254 Fed. Appx. 62–63. This raises the question of when and how a trial court is to determine whether course of conduct charging is proper in a particular case.

The solution to this enigma, the Second Circuit has suggested, is that multiple violations of a statute can reasonably and constitutionally be charged in a single count when the course of conduct forms the "essence" of the alleged criminality. See, e.g., id.; *United States* v. *Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989), cert. denied, 493 U.S. 1081, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990), and cert. denied sub nom. *Guarino* v. *United States*, 493 U.S. 1082, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990); see also, e.g., *United States* v. *Tawik*, 391 Fed. Appx. 94, 97 (2d Cir. 2010) ("[a]s long as the essence of the alleged crime is carrying out a single scheme . . . then aggregation is permissible" (internal quotation marks omitted)). When the statutory language is silent on the issue, courts that follow *Margiotta* consider the following nonexhaustive list of factors

when evaluating the essence of the allegations against the defendant: whether the alleged instances of misconduct involved the same defendants, the same victims, the same (or similar) conduct, at the same location, inspired by the same motive or purpose; whether the misconduct took place over a relatively short period of time or occurred frequently and more or less regularly over a longer period of time; whether the individual instances of misconduct can properly and reasonably be characterized as part of a common scheme or plan; whether there is considerable generic trial testimony and other evidence that is focused on the overall course of misconduct rather than on specific instances; whether the individual instances of misconduct were interrelated or interdependent; whether the individual instances were not subject to unique defenses or types of proof; whether charging each alleged violation as a separate count would unnecessarily cumulate charges and potential criminal liability or render prosecution impracticable; whether a juror reasonably could consider the individual instances alleged to be incidental as merely means of accomplishing the overarching criminal design; and whether the crime is one that frequently is committed as part of a repetitive pattern or scheme and that historically has been understood and charged as a course of conduct.

When most of these factors indicate that the essence of the charged crime is the pattern of misconduct, rather than a few individual instances thereof, then it will be reasonable to think of the course of conduct as the crime at issue, and the sixth amendment does not require juror unanimity as to any particular instance. See, e.g., *United States* v. *Davis*, 471 F.3d 783, 790–91 (7th Cir. 2006); *United States* v. *Moloney*, supra, 287 F.3d 241; *Commonwealth* v. *Casbohm*, 94 Mass. App. 613, 619–21, 116 N.E.3d 633 (2018), review denied, 484 Mass. 1101, 141 N.E.3d 910 (2020); *State* v. *Rucker*, 752 N.W.2d 538, 548 (Minn. App. 2008), review denied, 2008 Minn. LEXIS 508 (Minn. September 23, 2008).

D

The Second Circuit thus takes a flexible approach to duplicitous charging, affording the prosecutor the discretion to charge a course of conduct when that reasonably comports with the facts of the case and does not conflict with the stated intent of the legislature, and then addressing any potential constitutional concerns pragmatically, on a case-by-case basis. I agree with that approach. As I noted, to the extent that the law of duplicity encompasses federal constitutional considerations, this court gives decisions of the Second Circuit "particularly persuasive weight in the resolution of issues of federal law  . . . ."[20] (Internal quotation marks omitted.) *St. Juste* v. *Commissioner of Correction*, 328 Conn. 198, 210, 177 A.3d 1144 (2018). As I subsequently discuss, I disagree with the majority's con-

tention that "the great weight of federal jurisprudence conflicts with [the views of the Second Circuit in this respect]." (Internal quotation marks omitted.) Part I C of the majority opinion.

I also believe that the Second Circuit approach is fully consistent with Connecticut law; the federal and state constitutions and rules of pleading have comparable provisions, and, although Connecticut has codified the plain meaning rule; see General Statutes § 1-2z; the federal courts of appeals—including the Second Circuit—follow essentially that same rule when they construe statutes. See, e.g., *Springfield Hospital, Inc.* v. *Guzman*, 28 F.4th 403, 422 (2d Cir. 2022). Indeed, they are bound to do so. See, e.g., *Barnhart* v. *Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002).

Of course, I agree that the legislature always, ultimately, has the authority to dictate how a criminal statute may be applied. Under § 1-2z, if the legislature expressly defines a course of conduct crime, or makes clear its intent in the legislative history, then there is no question that it may—or, more likely, must—be so charged.[21] If the legislature expressly prohibits such charging, then it is not permissible.[22] The legislature's authority to make that determination is not in dispute under the Second Circuit approach. See, e.g., *United States* v. *Moloney*, supra, 287 F.3d 240.

The issue before us is how to proceed in the vast majority of cases, when the legislature has left the question open, neither expressly permitting or requiring nor expressly prohibiting course of conduct charging on the face of the statute. I agree with the majority that the legislative history, if it manifests a clear intent one way or the other, also can be dispositive in this regard. In most instances, however, there is no reason to think that legislators even considered the question of course of conduct charging when enacting any particular statute, let alone decided to prohibit such charging. As we have recently observed, "[o]ften the inquiry [into the allowable unit of prosecution] produces few if any enlightening results. Normally these are not problems that receive explicit legislative consideration."[23] (Internal quotation marks omitted.) *State* v. *Ruiz-Pacheco*, 336 Conn. 219, 236 n.12, 244 A.3d 908 (2020).

The majority relies on cases such as *State* v. *Cody M.*, 337 Conn. 92, 102–103, 106, 259 A.3d 576 (2020), for the proposition that Connecticut does not apply a general presumption that a prosecutor has the discretion to charge a crime as a continuing course of conduct. Of course, until now, we have not had cause to discuss any such general presumption because, as the majority emphasizes, until today, this court did not recognize duplicity challenges based on unanimity of instances. There was no need or reason to clarify the scope of an exception to a rule that did not exist.

More important, though, cases such as *Ruiz-Pacheco* and *Cody M.* involved the issue of multiplicity, an entirely different legal question.[24] As noted, pleadings can be challenged both for duplicity (charging multiple offenses in one count) and for multiplicity (charging one offense in multiple counts). As I discuss in my concurring and dissenting opinion in *State* v. *Joseph V.*, 345 Conn.    ,    ,    A.3d    (2022) (*Mullins, J.*, concurring in part and dissenting in part), when, as in *State* v. *Cody M.*, supra, 337 Conn. 96–97, a defendant commits a series of acts against a victim on one occasion, and the state charges the series of acts as multiple, distinct crimes, the court must determine the permissible minimum unit of prosecution. That is, we must determine whether the legislature intended to permit the state to charge each individual act as a distinct crime when the defendant contends that each act was merely part of one criminal episode. The answer to that question says nothing about the question before us in the present case and in *Joseph V.*, namely, whether the legislature intended to require that an ongoing series of violations, committed over many days, each be charged individually. That is a question that we have never addressed, and nothing in Connecticut law bars us from following the Second Circuit approach.

Contrary to the majority's approach, we must assume that legislators, when enacting a new criminal statute, are aware of our state's long history of affording prosecutors broad discretion in the charging of crimes such as child sexual assault as continuing courses of conduct; see footnote 14 of this opinion and accompanying text; and that they do not intend to intrude on or restrict that discretion, unless they clearly state so. Indeed, as I discuss in my concurring and dissenting opinion in *State* v. *Joseph V.*, supra, 345 Conn.    (*Mullins, J.*, concurring in part and dissenting in part), the fact that the legislature has, in certain instances, expressly provided either that a particular statute must be charged as a continuing offense; see, e.g., General Statutes § 53a-181d (b) (1) and (2); or that it must not be charged as a continuing offense; see, e.g., General Statutes § 15-173; strongly supports applying the Second Circuit presumption that other statutes, which are silent on the question, can be charged either way under appropriate circumstances. In short, when the legislature wishes to speak on the issue, one way or the other, it knows how to do so.

For all of these reasons, I would adopt the Second Circuit's approach to duplicity. It keeps the charging decision in the hands of the officers who are responsible for that decision, the prosecutors, and preserves their authority to bring charges in the manner most consistent with the interests of justice and the facts and circumstances of the particular case. The rule that the majority adopts today, by contrast, would undermine

prosecutors' well established role in the charging process in a manner that the federal constitution does not require and that our state legislature never mandated or anticipated.

E

It is not only the Second Circuit that has declined to follow the majority's approach. Although the majority repeatedly contends that most federal courts of appeals and " 'the great weight' " of federal authority support its proposed framework, the truth is that at least five other federal courts of appeals have relied on *Margiotta* and embraced the Second Circuit framework, at least in some instances. That is, they have permitted course of conduct charging in the absence of any clear manifestation of legislative intent, and they have recognized that the charging decision falls within the discretion of the prosecutor, so long as the charge is not unreasonable and the defendant's fundamental rights are respected.[25] As has the Second Circuit, those courts of appeals have applied this approach across a broad range of statutory crimes, including those involving the sexual abuse of young children.[26]

Accordingly, I cannot agree with the majority's statement that, "[w]hen a single count does charge the defendant with having violated a single statute in multiple, separate instances, each of which could establish a separate violation of the statute, federal courts agree that such a count is duplicitous." Part I B of the majority opinion. I cited numerous federal appellate cases, across the circuits, that expressly say the exact opposite.[27]

Outside of the United States Courts of Appeals for the First, Third, Fifth, and Eleventh Circuits, the majority has not identified one case that broadly and unequivocally adopts its rule that, unless the legislature clearly permits it, a crime that could be charged as individual infractions cannot also be charged, in the alternative, as a continuing course of conduct. Indeed, even among those circuits, whose approach to duplicity most closely approximates that of the majority, some cases take a more flexible approach.[28]

F

The same is true of sister state courts. Although some states have adopted an approach similar to the majority's approach, allowing course of conduct charging for a particular statute only when it is clear that the legislature so intended,[29] others favor the more flexible approach that I have outlined. See, e.g., *Cooksey* v. *State*, 359 Md. 1, 18–19, 752 A.2d 606 (2000) (acknowledging "split of authority" in child sexual abuse context and citing cases).

There is a particular category of criminal cases in which I believe the approach I favor clearly demonstrates its superiority. Those cases involve sexual

assault crimes and, more specifically, the repeated sexual abuse of children. Indeed, our sister state courts have been especially receptive to applying the Second Circuit approach when it comes to what the California Supreme Court has dubbed "resident child molester" cases.[30] (Internal quotation marks omitted.) *People* v. *Jones*, 51 Cal. 3d 294, 299, 792 P.2d 643, 270 Cal. Rptr. 611 (1990);[31] see footnote 32 of this opinion and accompanying text. Prosecutors face a unique challenge when charging a defendant in a case in which the statute at issue uses language that, on its face, envisions individual, discrete sexual violations, but, due to the victim's young age and the often recurring nature of such abuse, the victim can testify only (or primarily) that the defendant abused him or her in a particular way and in a particular location, during a particular span of time, but cannot provide sufficient detail to identify each separate instance of abuse. Although federal cases occasionally address the issue; see footnote 26 of this opinion; most cases alleging sexual abuse of children are prosecuted at the state level. It is to these decisions that we must look for guidance.

Sister state courts have afforded prosecutors broad latitude as to whether to charge the sexual abuse of children as discrete violations or as a course of conduct crime, recognizing the significant challenges involved in bringing resident child molesters to justice.[32] As these courts have recognized, the state, the victim, and society at large all share a compelling interest in prosecuting an insidious crime—the repeated sexual abuse of young children. It can be nearly impossible, however, to charge and prosecute each individual instance of abuse when a molester has repeatedly assaulted a child, whose account of the abuse may be the only evidence of the crimes. Sister state courts have cautioned, as have we, that a serial abuser should not benefit and escape justice by virtue of having repeatedly and secretly assaulted a young victim who, as the only witness to the abuse, is incapable of testifying as to dates, times, and other distinguishing details of each incident.[33] See, e.g., *State* v. *Stephen J. R.*, 309 Conn. 586, 601, 72 A.3d 379 (2013) ("[t]o require [the complainant], who was approximately seven years old at the time of the abuse, to recall specific dates or additional distinguishing features of each incident would unfairly favor the defendant for the commission of repetitive crimes against a child victim"). These courts thus afford prosecutors broad discretion to decide whether course of conduct charging is appropriate.[34] I fear that the approach the majority takes today does exactly that which this court, and other state courts, has cautioned against, by requiring a child who has been repeatedly sexually assaulted to clearly delineate multiple instances of abuse and to recall each with specificity.

None of the state cases cited in footnote 32 of this opinion was decided on the basis of a close parsing of

the statutory language, and none purported to permit course of conduct charging as a matter of express legislative intent. Rather, the courts simply considered, on a case-by-case basis, whether such charging comports with the constitutional and policy considerations that underlie the doctrine of duplicity.

In short, in my view, the rule that the majority adopts hamstrings prosecutors, potentially leaving victims, and, most especially, victims of resident child molesters, without recourse. It places additional, unnecessary burdens on the legislature, to amend each statute to expressly authorize course of conduct charging, and on our trial courts, to manage unnecessarily complex trials involving, potentially, dozens of similar charges against the same defendant. And it does as much to penalize as to protect criminal defendants, by requiring multicount charging in legitimate course of conduct cases.

## II

An additional flaw in the majority's approach, I believe, is that it is deceptively difficult to apply. One might think the opposite would be true. A framework providing that course of conduct charging is always permissible when expressly approved by the legislature and always impermissible when not expressly approved by the legislature would seem to boast an enviable simplicity, if nothing else. In reality, however, except for the small number of statutes for which the legislature has clearly evidenced its intention one way or the other, parsing whether each of the countless facially silent statutes contemplates course of conduct charging proves to be an exercise in subjectivity, if not futility. The present appeal is a case in point.[35]

Section 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ." The majority readily acknowledges that there is nothing in the plain language of § 53-21 (a) (2) that addresses the issue of duplicity or course of conduct charging. Moreover, it is well established that each instance of improper intimate contact can be charged as a discrete crime under § 53-21.[36] The majority concedes as much.

Because the statute does not facially authorize course of conduct charging, I turn to the statutory history for insight into legislative intent on whether such charging is permissible. I do not read the majority's opinion to have identified any statements in the legislative history that specifically indicate that the legislature intended § 53-21 (a) (2) to be chargeable as a continuing course of conduct crime. My own review of the history also

has not revealed any statements directed to the course of conduct issue. Rather, I understand the majority simply to be stating that *this court* already had interpreted an earlier version of the risk of injury statute to permit charging a continuing course of conduct, and that there is no indication that the legislature, when it amended the statute in 1995 to add the language that now appears in subsection (a) (2); see Public Acts 1995, No. 95-142, § 1 (P.A. 95-142); intended to change that interpretation. The majority states that, although "[i]t is not clear from the plain language of § 53-21 (a) (2) [whether] multiple, separate instances of conduct" can be charged as a continuing offense, "[i]n case law prior to the 1995 amendment . . . this court held that risk of injury to a child may be charged under a continuing course of conduct theory." (Citation omitted.) Part II of the majority opinion. The majority then states that the 1995 amendment "maintained" and "manifestly [did not] alter" our prior interpretations of the statute—when subsection (a) (2) did not exist—and that "[t]here is no indication that the legislature sought to alter the substance of the crime." Id. So, the issue, ultimately, is one of legislative acquiescence.

In this case, however, there are two reasons why the legislative acquiescence argument is particularly unpersuasive. First, if there was legislative acquiescence in this case, it ratified my approach to the law of duplicity, rather than that of the majority. When we initially held that risk of injury can be charged as a course of conduct, we did not reach that conclusion as a matter of statutory interpretation; nor did we purport to divine the intent of the legislature. This is a key point.

The case in which this court first recognized that a version of the risk of injury statute prior to the 1995 amendment could be charged as a continuing course of conduct crime was *State* v. *Hauck*, 172 Conn. 140, 374 A.2d 150 (1976). The defendant in that case, a middle school teacher, challenged the trial court's denial of his motion for a supplemental bill of particulars when the state charged him with violating General Statutes (Rev. to 1972) § 53-21 by forcing a student to pose nude for him on a regular, sometimes weekly, basis "on or about divers dates" between November 11, 1971, and June, 1972. (Internal quotation marks omitted.) Id., 150; see also id., 141–42. This court concluded, in affirming the conviction, that "[t]he offenses charged . . . were obviously of a continuing nature"; id., 150; and its analysis made no reference whatsoever to the statutory language, the legislative history of the statute, or any other indicia of legislative intent. Rather, in deferring to the trial court's discretion in allowing course of conduct charging, this court relied on purely practical considerations: that the charges were "clearly reasonable" in light of the trial testimony and that "it would have been virtually impossible to provide the many specific dates [on] which the acts constituting the offenses

occurred."[37] Id., 150–51; see also *State* v. *Spigarolo*, 210 Conn. 359, 391, 556 A.2d 112 (reiterating pragmatic holding of *Hauck*), cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). If the legislature has, in the intervening years, placed its imprimatur on *Hauck*, as the majority suggests, then it has endorsed not a statutory analysis of the meaning of § 53-21—*Hauck* and the other appellate cases that were decided prior to the 1995 amendment offered no such analysis[38]— but, rather, the very framework that I am supporting, under which the state has the discretion to charge a course of conduct when appropriate.

Second, because legislators emphasized, in 1995, that the new language of P.A. 95-142, § 1, which now appears in subsection (a) (2) of § 53-21, defined a "new" crime; 38 S. Proc., Pt. 5, 1995 Sess., pp. 1766, 1777, remarks of Senator Thomas F. Upson; the legislative history itself contradicts the majority's position. Prior to the 1995 amendment, General Statutes (Rev. to 1995) § 53-21 provided: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be *placed in such a situation* that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, *or does any act* likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both." (Emphasis added.) In the legislative history of the 1995 amendment, one of the bill's authors stated that the new language prohibiting intimate contact with a child under the age of sixteen years defined a "new" risk of injury crime. 38 S. Proc., supra, pp. 1766, 1777, remarks of Senator Upson. So, there is no reason to think that the legislature intended prior judicial interpretations of the old § 53-21, the first part of which (the situation portion) may have authorized course of conduct charging, to apply to the newly added provision.[39] For these reasons, I do not find the majority's duplicity analysis to be persuasive.

III

In the present case, the application of the approach that I favor reaches the same result as does the application of the majority's approach but, I think, in a way that more directly considers and accounts for the various practical and constitutional interests at stake. To review, in multiple instances cases, I would adopt a framework for evaluating duplicity related challenges by which (1) unless the legislature specifies otherwise, the prosecutor has the discretion to charge a pattern of many similar infractions as a single scheme or as a course of criminal conduct, (2) the trial court should not permit course of conduct charging if such charging would be unreasonable or unfair under the circumstances or would violate the defendant's fifth or sixth amendment (or other constitutional) rights, and (3) if

an appellate court, on review, concludes that the trial court should not have permitted course of conduct charging, either because the defendant's conduct cannot fairly be characterized as a single scheme or pattern, or because the constitutional considerations that underlie the rule against duplicity are implicated, then the trial court's determination is subject to harmless error analysis.[40]

Application of this framework to the present case is a relatively straightforward matter. First, with respect to the plain language of the statute, I agree with the majority that the plain language of § 53-21 (a) (2) "does not appear to clarify whether the statute criminalizes a continuing course of conduct or limits its scope to a single occurrence."[41] Part II of the majority opinion. In addition, as I discussed in part II of this opinion, nothing in the legislative history suggests that the legislature resolved—or considered—the course of conduct question one way or the other when drafting the statute. Course of conduct charging is, therefore, left to the discretion of the prosecutor.

Second, I have little trouble concluding that the victims' allegations in the present case reasonably can be characterized as an ongoing pattern or scheme of misconduct, such that course of conduct charging was a reasonable and proper exercise of prosecutorial discretion. Both N and T, for example, alleged that the defendant touched their breasts on a regular basis, between 2005 and 2007, at his residence in Lisbon. They did not report the abuse until years later, though, and, with a few notable exceptions, they could not recall the specific dates or other details of the abuse.

Third, and most important for present purposes, is the question of whether charging the defendant's various abuses of each victim as a course of conduct violated his sixth amendment right to a unanimous jury verdict. The defendant contends that, insofar as the victims identified in counts one (N) and six (T) offered both generic testimony as to repeated improper contact, such as breast touching, as well as more detailed accounts of some specific incidents of abuse, it is impossible to know whether the jury unanimously agreed that he committed any one particular act of risk of injury against each victim.[42]

As I previously discussed, the Second Circuit has long held that the sixth amendment right to a unanimous jury verdict is not implicated when a crime is properly charged as a course of conduct. The principal rationale for this rule is that the crime with which the defendant is being charged in these cases is, in essence, the course of conduct itself. See, e.g., *State* v. *Hauck*, supra, 172 Conn. 151 (series of acts committed during seven month period, considered "in toto," constituted risk of injury).

As I noted, however, this principle applies only when

the essence of the charged wrongdoing can fairly be said to be a scheme or course of criminal conduct. In the present case, I have no difficulty concluding that the misconduct alleged in counts one and six was well suited to course of conduct charging. Each count charged that a single individual, the defendant, abused a single victim. Both victims primarily testified to a pattern of undifferentiated conduct—unwanted touching of their breasts—which they said occurred numerous times and on a regular basis, over the course of years, when they were visiting the defendant's home in Lisbon. There is no suggestion in the record that any of the individual assaults were inspired by anything other than the lecherous motives that one might expect, and the victims' testimony that the defendant and his wife expressed regular appreciation for their breasts suggests that the misconduct reasonably can be characterized as part of an ongoing pattern or scheme. The primary evidence for both the specific incidents and the general course of conduct alleged was simply the victims' own testimony, and the defenses offered were equally generic. Although defense counsel cross-examined the victims regarding some of the specific details of the incidents that they described, the defense as to each of those incidents—as well as to all of the generic abuse testimony—was the same: a blanket denial of the accusations, an attack on the victims' credibility, and a theory that the victims had fabricated their stories to retaliate, after a family squabble.

In addition, the sexual abuse of children is a crime that is commonly understood to occur on an ongoing, repetitive basis, and there is compelling reason to afford prosecutors discretion to charge such offenses as courses of conduct. Cases that involve the sexual abuse of children, regardless of whether the complainants in those cases give only generic testimony or also describe a few particular incidents in addition to a generic pattern of abuse, typically turn on the general credibility of the complainants, any other witnesses, and, if they choose to testify, the defendants. To apply strict specific unanimity requirements in such cases would place an unwarranted burden on young victims of sexual assault, essentially penalizing them for providing whatever limited, specific details they might be able to recall to corroborate their stories. For this reason, as the United States Supreme Court explained in *Richardson* v. *United States*, 526 U.S. 813, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999), "[s]tate courts interpreting [sexual abuse of a minor] statutes have sometimes permitted jury disagreement about a specific underlying criminal incident insisting only [on] proof of a continuous course of conduct in violation of the law. . . . The state practice may well respond to special difficulties of proving individual underlying criminal acts . . . ."[43] (Citations omitted; internal quotation marks omitted.) Id., 821. That is to say, courts have been loath to force young

victims of sexual abuse to choose between either (1) testifying as to each individual incident of abuse with sufficient precision to allow the state to prove it beyond a reasonable doubt or (2) confining their testimony entirely to generic assertions and suppressing any supporting details that they are able to recall. For these reasons, I do not believe that the trial court abused its discretion in permitting the state to charge all of the alleged incidents of inappropriate conduct against N and T in counts one and six, respectively.

Fourth, there is no plausible claim—and the defendant does not contend—that the defendant's due process rights were violated when the state charged his alleged assaults on each victim as one course of conduct. The defendant received adequate notice of the crimes charged, as the state's long form substitute information identified each victim by her initials and her date of birth and accused the defendant of violating § 53-21 (a) (2), at his home in Lisbon, beginning "in or about 2005" and continuing through various dates between 2006 and 2010, depending on when each victim reached the age of sixteen. Nothing more was required. Nor did the charges compromise the defendant's ability to present a defense, as in cases in which a defendant claims to have a partial alibi or when the charged conduct would not have constituted a crime during some portion of the alleged course of conduct. In the present case, the defendant readily conceded that he was regularly present with the victims at his Lisbon home during the years in question; his defense was that the victims' accusations were simply false. Finally, there is no double jeopardy problem with course of conduct charging because the defendant cannot subsequently be retried for any similar conduct that occurred during the time period at issue. Accordingly, I agree with the majority's ultimate conclusion that the defendant's conviction should be upheld.

## IV

For all of the foregoing reasons, I believe that the present case is a quintessential example of why prosecutors must be given the discretion to charge the ongoing sexual abuse of young children as a single course of conduct. Permitting such charging, when fair and appropriate, respects the broad authority traditionally conferred on prosecutors to levy the appropriate charges, according to the circumstances of each case. It ensures that young, repeat victims of these heinous crimes can have their day in court and not be shut out because they cannot recall, with specificity, particular incidents from among an ongoing pattern of repeated abuse. But, importantly, my view considers the interests of defendants as well, avoiding needless repetitive charging, limiting the maximum jail time and criminal jeopardy to which defendants are exposed, and recognizing that defendants' sixth amendment rights must

be considered even when course of conduct charging is appropriate. For these reasons, I respectfully concur in the judgment.

[1] Although § 53-21 has been amended several times since the events underlying the present appeal; see Public Acts 2015, No. 15-205, § 11; Public Acts 2013, No. 13-297, § 1; Public Acts 2007, No. 07-143, § 4; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, unless otherwise noted, I refer to the current revision of the statute.

[2] See, e.g., *United States* v. *Schlei*, 122 F.3d 944, 979 (11th Cir. 1997) ("[s]everal [federal courts of appeals] have rejected the [Fifth Circuit's] analysis"), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998). As I discuss hereinafter, the duplicity framework that the majority has adopted largely tracks the approach followed by the Fifth Circuit.

[3] Under the Second Circuit approach, specific unanimity instructions generally are not required; see, e.g., *United States* v. *Natelli*, 527 F.2d 311, 325 (2d Cir. 1975), cert. denied, 425 U.S. 934, 96 S. Ct. 1663, 48 L. Ed. 2d 175 (1976); especially when multiple instances are properly charged as a course of conduct. See, e.g., *United States* v. *Walker*, 254 Fed. Appx. 60, 62–63 (2d Cir. 2007). This court has followed a similar approach. See, e.g., *State* v. *Sorabella*, 277 Conn. 155, 206–207, 891 A.2d 897 (instruction not required when state charged promotion of obscene materials as course of conduct), cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006); *State* v. *Spigarolo*, 210 Conn. 359, 383, 391, 556 A.2d 112 (risk of injury), cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).

Nevertheless, in the vast majority of cases, specific unanimity instructions will be advisable when the prosecutor charges multiple instances. Stated more directly, when the prosecutor opts to charge multiple instances, it would be "sound practice" for the trial court to give a specific unanimity instruction so as to protect the defendant's right to jury unanimity. *United States* v. *Natelli*, supra, 527 F.2d 325 (although specific unanimity instruction is not always required, charging multiple instances in one count without instruction runs risk of violating jury unanimity requirement). When the prosecutor has charged a course of conduct crime, the trial court may tailor the instruction so as to ensure jury unanimity under the facts and circumstances of the case. See, e.g., *United States* v. *Prieto*, 812 F.3d 6, 11–12 (1st Cir.), cert. denied,     U.S.    , 137 S. Ct. 127, 196 L. Ed. 2d 100 (2016); *United States* v. *Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981). Ultimately, though, I agree with the majority that the trial court's failure to give such an instruction in the present case did not run afoul of the sixth amendment.

[4] Compare, e.g., *United States* v. *Girard*, 601 F.2d 69, 72 (2d Cir.) (acts could reasonably be understood as part of single scheme), cert. denied, 444 U.S. 871, 100 S. Ct. 148, 62 L. Ed. 2d 96 (1979), with *United States* v. *Tanner*, 471 F.2d 128, 139 (7th Cir.) (acts could not be so charged), cert. denied, 409 U.S. 949, 93 S. Ct. 269, 34 L. Ed. 2d 220 (1972). *Tanner*, on which the majority relies, is an excellent example of a decision in which the prosecutors were deemed to have abused their discretion in charging a single course of conduct. Although the United States Court of Appeals for the Seventh Circuit emphasized the scope and importance of prosecutorial discretion in this area; see *United States* v. *Tanner*, supra, 138–39; the court held that it was an abuse of that discretion to charge, in a single count, multiple illegal acts of transporting explosives, when those acts were committed by different defendants over the course of four months. See id., 139. Although the majority is correct that the court in *Tanner* considered the breadth of the statutory language, it ultimately resolved the case by indicating that, as the Ninth Circuit held in *Cohen* v. *United States*, 378 F.2d 751, 754 (9th Cir.), cert. denied, 389 U.S. 897, 88 S. Ct. 217, 19 L. Ed. 2d 215 (1967), which was not a statutory interpretation case, the government has discretion—albeit cabined discretion—in determining whether to charge a series of violations as a single scheme. See *United States* v. *Tanner*, supra, 138–39.

[5] See, e.g., Conn. Const., amend. XXIII; General Statutes § 51-277 (a); *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 563, 574–76, 663 A.2d 317 (1995).

[6] As I explain in part I B, Connecticut prosecutors have been charging crimes as continuing offenses since the nineteenth century, long before the adoption of the state constitution in 1965, and they have been exercising their discretion to charge crimes such as sexual assault, which are not inherently or even primarily ongoing crimes, as course of conduct crimes for more than seventy years. I agree with the majority that prosecutors' authority to charge in this manner is not *expressly* conferred by any constitu-

tional or statutory provision, and I do not mean to imply that it is the result of a constitutional grant of authority. It is, in my view, an ancient common-law pleading tradition, one that the legislature is well aware of and continues to implicitly approve. Nevertheless, I noted the authority conferred on Connecticut prosecutors by statute and the constitution because I believe that their discretion over course of conduct charging decisions is fully consistent with that broad authority.

[7] Practice Book § 36-21 provides: "Two or more offenses may be charged in the same information *in a separate count for each offense* for any defendant." (Emphasis added.)

[8] Rule 8 (a) of the Federal Rules of Criminal Procedure provides: "The indictment or information may charge a defendant *in separate counts* with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." (Emphasis added.) It has been broadly accepted, however, that charging a course of conduct crime in a single count does not violate the rule. See, e.g., *United States* v. *Conlon*, 661 F.2d 235, 239 (D.C. Cir. 1981) ("[p]erusal of many cases in which error was predicated on the duplicity of an indictment reveals that an exception [to rule 8 (a)] exists for a continuing scheme or a course of conduct [that] violates but one criminal statutory provision"), cert. denied, 454 U.S. 1149, 102 S. Ct. 1015, 71 L. Ed. 2d 304 (1982).

[9] See, e.g., N.Y. Crim. Proc. Law § 200.30 (1) (McKinney 2007).

[10] As the majority points out, the defendant has not separately briefed a state constitutional claim before this court. See footnote 5 of the majority opinion.

[11] See, e.g., *United States* v. *Jaynes*, 75 F.3d 1493, 1502 n.7 (10th Cir. 1996); see also, e.g., *United States* v. *Correa-Ventura*, 6 F.3d 1070, 1081 (5th Cir. 1993) ("[T]he issues of duplicity and unanimity are evaluated at different procedural stages of the criminal proceedings—duplicity is generally reviewed during the pretrial phase, whereas unanimity must be determined after all the evidence has been introduced at trial. For this reason, the inquiry as to whether offenses are distinct for purposes of duplicity is not identical to the analysis employed in determining whether the actions charged are so dissimilar that unanimity is required."); *Lane* v. *Graham*, Docket No. 9:14-cv-01261-JKS, 2016 WL 154111, *10 (N.D.N.Y. January 12, 2016) ("[T]he [United States] Supreme Court has never held that an indictment containing duplicitous counts violates the [d]ue [p]rocess [c]lause. . . . The Second Circuit has further indicated that duplicitous pleadings are not even presumptively invalid in and of themselves." (Citation omitted.)); *Jones* v. *Lee*, Docket No. 10 Civ. 7915 (SAS), 2013 WL 3514436, *7 (S.D.N.Y. July 12, 2013) ("Procedural rules create the prohibition of duplicitous counts—there is no constitutional right against duplicity per se. . . . However, a duplicitous count may violate a defendant's constitutional rights . . . if it violates the [s]ixth [amendment] . . . ." (Footnotes omitted; internal quotation marks omitted.)), appeal dismissed, United States Court of Appeals for the Second Circuit, Docket No. 13-2970 (October 26, 2013).

[12] See, e.g., *United States* v. *Ramirez-Martinez*, 273 F.3d 903, 915 (9th Cir. 2001) ("[t]he rules about . . . duplicity are pleading rules, the violation of which is not fatal to an indictment" (internal quotation marks omitted)) (overruled on other grounds by *United States* v. *Lopez*, 484 F.3d 1186 (9th Cir. 2007)), cert. denied, 537 U.S. 930, 123 S. Ct. 330, 154 L. Ed. 2d 226 (2002); *United States* v. *Droms*, 566 F.2d 361, 363 n.1 (2d Cir. 1977) ("[d]uplicity, of course, is only a pleading rule and would in no event be fatal to the count"); *Reno* v. *United States*, 317 F.2d 499, 502 (5th Cir.) ("[d]uplicity is not a fatal defect" (internal quotation marks omitted)), cert. denied, 375 U.S. 828, 84 S. Ct. 72, 11 L. Ed. 2d 60 (1963).

[13] Compare *State* v. *Bosworth*, 54 Conn. 1, 2, 4 A. 248 (1886) ("all offenses involving continuous action, and which may be continued from day to day, may be so alleged"), and *Commonwealth* v. *Pray*, 30 Mass. 359, 362 (1833) ("[whenever] the crime consists of a series of acts, they need not be specially described, for it is not each or all the acts of themselves, but the practice or habit which produces the principal evil and constitutes the crime" (emphasis omitted)), with *State* v. *Munger*, 15 Vt. 290, 296–97 (1843) (continuando must be disregarded as "surplusage").

I do not suggest that *Bosworth* stood for the proposition that any crime can be charged by continuando, only that Connecticut has long taken a more expansive approach than have some other states to course of conduct charging.

[14] See, e.g., *State* v. *Silver*, 139 Conn. 234, 247, 93 A.2d 154 (1952) (*O'Sulli-*

*van, J.*, concurring) (state charged that, " 'at the [c]ity of Hartford on divers dates, the [defendant] did commit an indecent assault [on] a minor' "); *State* v. *Saraceno*, 15 Conn. App. 222, 225 n.1, 229, 545 A.2d 1116 (finding no constitutional violation when state charged defendant with committing second degree sexual assault against minor by intercourse " 'on divers uncertain dates, primarily on weekends, between August 1980 and August 1983,' " because "[e]ach count, although alleging repeated commissions of a crime, charged only a single set of essential elements comprising the offense"), cert. denied, 209 Conn. 823, 552 A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988); *State* v. *Mancinone*, 15 Conn. App. 251, 256 n.5, 545 A.2d 1131 (state charged second degree sexual assault, by intercourse with minors, " 'on divers dates between August 1983 and November 1984' "), cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989); *State* v. *Snook*, 210 Conn. 244, 265, 555 A.2d 390 (state charged second and third degree sexual assault when defendant engaged in sexual intercourse with victim "on 'divers days between June, 1979, and January, 1984' "), cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Osborn*, 41 Conn. App. 287, 295, 676 A.2d 399 (1996) (charging attempted first degree sexual assault of child "on diverse dates between June 20, 1986, and June 20, 1991"); *State* v. *Vumback*, 263 Conn. 215, 217, 219, 819 A.2d 250 (2003) (charging first and third degree sexual assault of child, as well as risk of injury to child, "on divers dates between approximately June, 1990 through July, 1996" (internal quotation marks omitted)); *State* v. *William B.*, 76 Conn. App. 730, 735, 822 A.2d 265 (in addition to risk of injury, state charged defendant with first degree sexual assault, specifically alleging that, "on divers dates between 1990 and 1994, *as a continuing course of conduct*, the defendant engaged in sexual intercourse with the victim, who was younger than thirteen" (emphasis added)), cert. denied, 264 Conn. 918, 828 A.2d 618 (2003); *State* v. *Romero*, 269 Conn. 481, 483–84, 504, 849 A.2d 760 (2004) (state charged that first degree sexual assaults of ten year old boy took place " 'on diverse dates between October, 1999 [and] March, 2000' "); *State* v. *Marcelino S.*, 118 Conn. App. 589, 593, 984 A.2d 1148 (2009) (state charged fourth degree sexual assault of child and risk of injury to child "on divers dates, between August 2003 and April 2005" (emphasis omitted; internal quotation marks omitted)), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010); *State* v. *Jessie L. C.*, 148 Conn. App. 216, 218–19, 227, 231, 84 A.3d 936 (state charged defendant with second and fourth degree sexual assault " 'on diverse dates between' " 2002 and July of 2009, after complainant "gave a detailed account of several specific incidents of sexual assault" and, in addition, alleged that defendant assaulted her two to three times per week at ages eleven and twelve, and at least daily between ages of thirteen and sixteen, under at least eleven different factual scenarios, encompassing approximately 7575 distinct incidents of abuse), cert. denied, 311 Conn. 937, 88 A.3d 551 (2014); *State* v. *Vere C.*, 152 Conn. App. 486, 508–10, 98 A.3d 884 (charging first degree sexual assault, as well as risk of injury to child, " 'on diverse dates between' " 2005 and 2010 based on allegations that defendant assaulted victim approximately ten times, in different residences and different physical positions), cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014); *State* v. *Michael D.*, 153 Conn. App. 296, 303, 322, 101 A.3d 298 (state charged first degree sexual assault and risk of injury to child, basing each charge on three different assaults of child, over three year period, each of which was factually distinct), cert. denied, 314 Conn. 951, 103 A.3d 978 (2014); *State* v. *Joseph V.*, 196 Conn. App. 712, 733, 230 A.3d 644 (2020) (see companion case, *State* v. *Joseph V.*, 345 Conn.     ,     ,     A.3d     (2022)).

The majority's view, apparently, is that this practice, which is founded in ancient common law and has been memorialized in our state's published appellate decisions for more than seventy years, has always been impermissible under (unstated) Connecticut law, but that the legislature has simply never addressed the rogue charging practice. The majority places it in the same category as unpublished trial court decisions and municipal zoning regulations, which fly below the legislature's radar. The more reasonable explanation, I would submit, is that the legislature, which is presumed to be aware of the published decisions of this court and the Appellate Court, is well aware of the practice and has opted not to abrogate the common law and to undermine the state's ability to prosecute resident child molesters. Cf. *Pacific Ins. Co., Ltd.* v. *Champion Steel, LLC*, 323 Conn. 254, 264, 146 A.3d 975 (2016) ("if the legislature wishes to abrogate the common law, it must do so expressly").

[15] Contrary to the majority's suggestion, I am fully aware that 18 U.S.C.

§ 1341 (1976) prohibits the use of the mailings in connection with a "scheme or artifice to defraud," and, therefore, it might be argued that the language of the statute itself contemplates course of conduct charging. As I discuss hereinafter, the Second Circuit and other courts following *Margiotta* have subsequently applied the same framework in the absence of any clear manifestation of legislative approval or intent, even in cases in which the statutory language does not prohibit or envision a course of conduct. See footnotes 18 and 25 of this opinion.

[16] Of course, if a statute expressly barred course of conduct charging, then that legislative determination would be binding. Rarely, however, is that the case.

[17] I underscored some federal cases that permit course of conduct charging without first analyzing the statutory language. The point of these cases is not that the statutory language is irrelevant, or that statutory analysis is not appropriate. The point is simply that a statute that is facially silent as to course of conduct charging presumptively permits it. In Connecticut, we still may need to go through the legislative history in order to ascertain legislative intent.

[18] See, e.g., *United States* v. *Anson*, 304 Fed. Appx. 1, 4 (2d Cir. 2008) (transportation and receipt of child pornography, in violation of 18 U.S.C. § 2252A), cert. denied, 556 U.S. 1160, 129 S. Ct. 1687, 173 L. Ed. 2d 1050 (2009); *United States* v. *Tutino*, 883 F.2d 1125, 1128, 1141 (2d Cir. 1989) (distribution of heroin, in violation of 21 U.S.C. § 841), cert. denied, 493 U.S. 1081, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990), and cert. denied sub nom. *Guarino* v. *United States*, 493 U.S. 1082, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990); *United States* v. *Girard*, 601 F.2d 69, 70, 72 (2d Cir.) (unauthorized sale of government property, in violation of 18 U.S.C. § 641), cert. denied, 444 U.S. 871, 100 S. Ct. 148, 62 L. Ed. 2d 96 (1979); *United States* v. *Natelli*, 527 F.2d 311, 314, 325 (2d Cir. 1975) (making material false and misleading statements in Securities and Exchange Commission proxy statement, in violation of 15 U.S.C. § 78ff (a)), cert. denied, 425 U.S. 934, 96 S. Ct. 1663, 48 L. Ed. 2d 175 (1976); *Lindsey* v. *Heath*, Docket No. 12-CV-2150 (ERK), 2015 WL 3849939, *1, *3 (E.D.N.Y. June 22, 2015) (burglary, in violation of New York law); *United States* v. *Jordan*, Docket No. 08-CR-124 (DLC), 2009 WL 2999753, *6 (S.D.N.Y. August 21, 2009) (communicating kidnapping threats, in violation of 18 U.S.C. § 875 (c)); *United States* v. *Sattar*, 272 F. Supp. 2d 348, 353, 382 (S.D.N.Y. 2003) (providing support to foreign terrorist organization, in violation of 18 U.S.C. § 2339B); *United States* v. *Martino*, Docket No. S1-00-CR-389 (RCC), 2000 WL 1843233, *2, *4 (S.D.N.Y. December 14, 2000) (tax evasion and subscribing to false returns, in violation of 26 U.S.C. §§ 7201 and 7206); *United States* v. *Gordon*, 990 F. Supp. 171, 177–78 (E.D.N.Y. 1998) (money laundering, in violation of 18 U.S.C. § 1956); *United States* v. *Mango*, Docket No. 96-CR-327, 1997 WL 222367, *1, *6 (N.D.N.Y. May 1, 1997) (violation of permit requirements imposed by Clean Water Act, 33 U.S.C. § 1319); *United States* v. *Weissman*, Docket No. S2-94-CR-760 (CSH), 1996 WL 742844, *1, *25–26 (S.D.N.Y. December 20, 1996) (obstruction of justice, in violation of 18 U.S.C. § 1505).

[19] See, e.g., *United States* v. *Mango*, Docket No. 96-CR-327, 1997 WL 222367, *6 (N.D.N.Y. May 1, 1997) ("Certainly, each violation . . . could have been charged in a separate count. However, under the law of [the Second] Circuit, the United States need not do so if it chooses a reasonable method of aggregating the offenses charged.").

[20] Notably, the Appellate Court has, on at least one occasion, adopted the Second Circuit approach and permitted course of conduct charging in the context of a sexual assault charge. See *State* v. *Saraceno*, 15 Conn. App. 222, 228–32, 545 A.2d 1116, cert. denied, 209 Conn. 823, 552 A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988). I disagree with the majority's contention that *Saraceno* is not relevant authority merely because this court had not yet formally articulated a jurisprudence of unanimity as to instances. It seems clear to me that, in *Saraceno*, the Appellate Court adopted the Second Circuit's approach to duplicity because it relied on the same federal cases that I would follow, such as *United States* v. *Margiotta*, supra, 646 F.2d 733, and *United States* v. *Shorter*, 608 F. Supp. 871, 879–80 (D.D.C. 1985), aff'd, 809 F.2d 54 (D.C. Cir.), cert. denied, 484 U.S. 817, 108 S. Ct. 71, 98 L. Ed. 2d 35 (1987), as well as the decision of this court in *State* v. *Bosworth*, 54 Conn. 1, 2, 4 A. 248 (1886). See *State* v. *Saraceno*, supra, 228–31. Indeed, the majority quotes *Saraceno* at some length as an accurate statement of the governing law.

[21] See, e.g., General Statutes § 53a-181d (b) (1) and (2) (stalking in second degree); see also, e.g., General Statutes § 53-142k (b) (1) (organized retail

theft).

[22] When courts and commentators provide examples of that type of law, they often point to statutes that impose a distinct penalty for each day that the statute is violated. A Connecticut statute of this kind would be General Statutes § 15-173, which, for docking violations, imposes a daily fine of up to $10,000 (or $25,000 for first violations committed wilfully or with criminal negligence, and $50,000 for subsequent criminal violations); see General Statutes § 15-173 (b) and (c); and provides expressly that "[e]ach violation shall be a separate and distinct offense, and, in the case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense." General Statutes § 15-173 (b). Another statute that uses essentially the same language is General Statutes § 22a-226 (a) (governing civil violations of solid waste management law).

[23] Contrary to the majority's suggestion, I would not require any "talismanic" use of language such as "continuous course of conduct" or "each single act" by the legislature before concluding that it had spoken definitively to these issues. (Internal quotation marks omitted.) Part II of the majority opinion. The majority, however, goes to the opposite extreme, perceiving meanings and restrictions in the legislative language for which there is simply no textual support.

[24] Although the majority is correct that this court did not find that any presumption was applicable in *Cody M.*, in light of the clear statutory language, this court has applied a presumption in favor of continuous course of conduct charging in closely related cases, such as *Ruiz-Pacheco*. See *State* v. *Ruiz-Pacheco*, supra, 336 Conn. 237 ("[a]pplying the rule of lenity here means interpreting assault to be a [course of conduct] offense" (internal quotation marks omitted)).

[25] See, e.g., *United States* v. *Davis*, supra, 471 F.3d 790–91 ("[When] the indictment fairly interpreted alleges a continuing course of conduct, during a discrete period of time, the indictment is not prejudicially duplicitous. . . . *The* [charging] *decision is left, at least initially, to the discretion of the prosecution.*" (Citation omitted; emphasis added; internal quotation marks omitted.)); *United States* v. *Denton*, 146 Fed. Appx. 888, 890 (9th Cir. 2005) (extortion indictment was not duplicitous, notwithstanding that defendant made threats over course of fifty-five days, because threats were made against single victim, pursuant to one plan, and dangers of duplicity were not present); see also, e.g., *United States* v. *Kamalu*, 298 Fed. Appx. 251, 252 (4th Cir. 2008) (government permissibly charged corruptly obstructing administration of Internal Revenue Code, on behalf of numerous clients over multiple years, as one single, continuing scheme); *United States* v. *Klat*, 156 F.3d 1258, 1266–67 (D.C. Cir. 1998) (single count charging threats against public official over six month period was not duplicitous and failure to give specific unanimity instruction was not plain error); *United States* v. *Saunders*, 641 F.2d 659, 661–62, 665 (9th Cir. 1980) (single count charging violation of Mann Act, 18 U.S.C. § 2421 et seq., prohibiting transportation of women in interstate commerce for purposes of prostitution, was not duplicitous as continuing course of conduct, without statutory analysis and despite fact that multiple interstate crossings over course of three months could have been charged as separate offenses), cert. denied, 452 U.S. 918, 101 S. Ct. 3055, 69 L. Ed. 2d 422 (1981); *United States* v. *Alsobrook*, 620 F.2d 139, 142 (6th Cir.) ("The determination of whether a group of acts represents a single, continuing scheme or a set of separate and distinct offenses is a difficult one that *must be left at least initially to the discretion of the prosecution. This discretion, however, is not without limits. . . .* Ultimately, the indictment must be measured in terms of whether it exposes the defendant to any of the inherent dangers of a duplicitous indictment." (Citation omitted; emphasis added.)), cert. denied, 449 U.S. 843, 101 S. Ct. 124, 66 L. Ed. 2d 51 (1980); *Cohen* v. *United States*, 378 F.2d 751, 754 (9th Cir.) (concluding, without analysis of statutory language, that, although each violation of 18 U.S.C. § 1084 (a) could have been charged as separate violation, prosecutor was free to charge series of violations as single infraction), cert. denied, 389 U.S. 897, 88 S. Ct. 217, 19 L. Ed. 2d 215 (1967); *United States* v. *Shorter*, 608 F. Supp. 871, 876 (D.D.C. 1985) ("[t]he grand jury, presumably under the guidance of the prosecutor, may charge few or many counts depending [on] a variety of factors, and, [in the absence of] oppression or impermissible duplicity, the decision with respect thereto is *within the realm of grand jury and prosecutorial discretion*" (emphasis added)), aff'd, 809 F.2d 54 (D.C. Cir.), cert. denied, 484 U.S. 817, 108 S. Ct. 71, 98 L. Ed. 2d 35 (1987).

The majority's efforts to distinguish these cases are unpersuasive. I do

not dispute that the statutory language can be relevant. My point is simply that the prosecutor has charging discretion when the statute does not expressly prohibit it. Although the majority is correct that these decisions, unlike *Moloney*, do not expressly adopt a general rule regarding course of conduct charging, the fairest reading of these decisions is that they are, in fact, applying the Second Circuit approach. As to the majority's contention that none of these cases so much as mentions a presumption of prosecutorial discretion in these matters, the highlighted language plainly belies that claim.

In support of its contention that the Ninth Circuit follows a different approach than it did in *Cohen*, *Saunders*, and *Denton*, the majority relies on *United States* v. *Newson*, 534 Fed. Appx. 604 (9th Cir. 2013). But *Newson* is a one page, summary affirmance, in which the court merely stated, in dictum, that, "[o]f course, jurors cannot be instructed that a defendant can be convicted of an offense if he committed, for example, crime A or crime B, unless they are also instructed that there must be unanimous agreement on which crime it was." Id., 605. *Newson* says nothing about course of conduct charging, which was not at issue, and certainly does not purport to overturn more than forty years of the Ninth Circuit's duplicity jurisprudence. Likewise, the Seventh Circuit case on which the majority relies, *United States* v. *Fawley*, 137 F.3d 458, 471 (7th Cir. 1998), is readily distinguishable, insofar as the analysis in that case is specific to the law of perjury and relies on *United States* v. *Gipson*, 553 F.2d 453, 458–59 (5th Cir. 1977), which, the majority agrees, does not govern these types of cases.

[26] See, e.g., *Dyer* v. *Farris*, 787 Fed. Appx. 485, 494–95 (10th Cir. 2019) (applying Oklahoma law and holding that charging alleged acts of child sexual abuse committed during six month period as single transaction did not violate clearly established federal law), cert. denied, ___ U.S. ___, 140 S. Ct. 1157, 206 L. Ed. 2d 207 (2020); *Ives* v. *Boone*, 101 Fed. Appx. 274, 294 (10th Cir.) (similar), cert. denied, 543 U.S. 1001, 125 S. Ct. 609, 160 L. Ed. 2d 460 (2004), and cert. denied, 543 U.S. 1026, 125 S. Ct. 669, 160 L. Ed. 2d 505 (2004); *United States* v. *Klade*, Docket No. 95-10213, 1996 WL 115291, *1 (9th Cir. March 14, 1996) (decision without published opinion, 79 F.3d 1155) (rejecting duplicity claim as to alleged violations of 18 U.S.C. § 2241 (c), which prohibits aggravated sexual abuse of children, and explaining that, "[i]n reviewing an indictment for duplicity, our task is not to review the evidence presented at trial to determine whether it would support charging several crimes rather than one, but rather solely to assess whether the indictment itself can be read to charge only one violation to each count" (internal quotation marks omitted)), cert. denied, 519 U.S. 850, 117 S. Ct. 141, 136 L. Ed. 2d 88 (1996).

[27] See, e.g., *United States* v. *Bowser*, Docket No. 96-50889, 1997 WL 802374, *1 (5th Cir. November 19, 1997) (decision without published opinion, 132 F.3d 1454) ("the indictment [was] not duplicitous even though each bad act alone could constitute an offense"); *United States* v. *Berardi*, 675 F.2d 894, 898 (7th Cir. 1982) ("two or more acts, each one of which would constitute an offense standing alone, may be joined in a single count without offending the rule against duplicity"); *United States* v. *Alsobrook*, 620 F.2d 139, 142–43 (6th Cir.) (concluding that indictment was not duplicitous, even though offenses could have been charged separately), cert. denied, 449 U.S. 843, 101 S. Ct. 124, 66 L. Ed. 2d 51 (1980); *Cohen* v. *United States*, 378 F.2d 751, 754 (9th Cir.) (count was not duplicitous, "even though each [infraction] might have been alleged as a separate violation"), cert. denied, 389 U.S. 897, 88 S. Ct. 217, 19 L. Ed. 2d 215 (1967).

I do not disagree that, as a general matter, duplicity is defined as charging multiple offenses in a single count. What I take issue with is the majority's repeated assertion that a majority of the federal courts of appeals have adopted a strict approach to course of conduct charging, making such charging a constitutional violation unless expressly authorized by statute or unless a bill of particulars was filed or the court gave a specific unanimity instruction.

[28] See, e.g., *United States* v. *Prieto*, 812 F.3d 6, 9, 11 (1st Cir.) (rejecting duplicity challenge, without considering statutory language, because government permissibly assumed burden of charging multiple violations of federal mail fraud statute as one unified scheme), cert. denied, ___ U.S. ___, 137 S. Ct. 127, 196 L. Ed. 2d 100 (2016); *United States* v. *Moyer*, 674 F.3d 192, 204–205 (3d Cir.) (when statutory language was silent, count charging falsification of multiple police reports was not duplicitous because "*the government has discretion* to draw [t]he line between multiple offenses and multiple means to the commission of a single continuing offense" (emphasis added; internal quotation marks omitted)), cert. denied, 568 U.S. 846, 133

S. Ct. 165, 184 L. Ed. 2d 82 (2012), and cert. denied sub nom. *Nestor* v. *United States*, 568 U.S. 1143, 133 S. Ct. 979, 184 L. Ed. 2d 760 (2013); *United States* v. *Root*, 585 F.3d 145, 150–53 (3d Cir. 2009) (when statutory language was silent on issue, government has discretion to charge tax evasion covering several years as single course of conduct when underlying basis of indictment is consistent, long-term pattern of criminal conduct); *United States* v. *Baytank (Houston), Inc.*, 934 F.2d 599, 609 (5th Cir. 1991) ("[n]otwithstanding that a defendant's actions, charged in a single count, could have been charged as separate violations, nevertheless a single count may be used [when] those actions represent a single, continuing scheme, provided the indictment (1) notifies the defendant adequately of the charges against him; (2) does not subject the defendant to double jeopardy; (3) does not permit prejudicial evidentiary rulings at trial; and (4) does not allow the defendant to be convicted by a nonunanimous jury verdict" (internal quotation marks omitted)).

The United States Court of Appeals for the Eleventh Circuit, although indicating that it might have followed a different approach as a matter of first impression, thought that it was compelled to adhere to Fifth Circuit precedent because of the common lineage of those courts. See *United States* v. *Schlei*, 122 F.3d 944, 979 (11th Cir. 1997) ("Several [federal courts of appeals] have rejected the [Fifth Circuit's] analysis . . . . Although the rationale of [an alternative approach] may be tempting, we are bound by the decision of the former Fifth Circuit . . . ." (Citations omitted; internal quotation marks omitted.)), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998).

[29] See, e.g., *State* v. *Paulsen*, 143 N.H. 447, 449–51, 726 A.2d 902 (1999); *People* v. *Algarin*, 166 App. Div. 2d 287, 287–88, 560 N.Y.S.2d 771 (1990); *State* v. *Saluter*, 715 A.2d 1250, 1253–55 (R.I. 1998).

[30] The phrase "resident child molester" describes cases in which the perpetrator lives with or has regular access to the child and, thus, is able to repeatedly sexually abuse the victim in such a way that there are unlikely to be third-party witnesses and the child is unlikely to be able to recall the specific dates or details of individual assaults.

[31] In *State* v. *Stephen J. R.*, 309 Conn. 586, 595–601, 72 A.3d 379 (2013), this court cited *Jones* with approval, albeit in the converse context of determining when, and to what extent, generic child abuse testimony can support multiple, independent counts. Although recognizing the need to secure a defendant's due process rights; see id., 595–97; we have repeatedly emphasized the need for flexibility in light of the unique challenges involved in prosecuting cases of child sexual abuse.

[32] See, e.g., *Dell'Orfano* v. *State*, 616 So. 2d 33, 35 (Fla. 1993) (rejecting bright-line rule in light of state's strong interest in eliminating sexual abuse of children and children's frequent inability to recall details of abuse); *Geiser* v. *State*, 83 So. 3d 834, 835 (Fla. App. 2011) ("in a case of ongoing sexual abuse of a child, [in which] the child is unable to remember the specific dates on which he or she was abused, the allegation that the act occurred on one or more occasions is not, per se, duplicitous" (internal quotation marks omitted)); *State* v. *Generazio*, 691 So. 2d 609, 611 (Fla. App. 1997) ("[w]ith the notable exception of New York, the courts of [other] states have recognized that child molestation is, by its very nature, a continuous course of criminality"); *Commonwealth* v. *King*, 387 Mass. 464, 467–68, 441 N.E.2d 248 (1982) (rejecting duplicity challenge in child sexual abuse case because course of conduct charge was permissible); *Commonwealth* v. *Joyce*, Docket No. 16-P-1531, 2018 WL 3468447, *3 (Mass. App. July 19, 2018) (decision without published opinion, 93 Mass. App. 1120, 107 N.E.3d 1256) (applying *King*), review denied, 482 Mass. 1107, 130 N.E.3d 166 (2019); *State* v. *Altgilbers*, 109 N.M. 453, 465, 786 P.2d 680 (App. 1989) ("courts have deferred to the prosecutor's charging pattern in such circumstances"), cert. denied, 109 N.M. 419, 785 P.2d 1038 (1990); *State* v. *Cruz*, Docket No. A-1-CA-35877, 2019 WL 5095831, *3 (N.M. App. September 30, 2019) (applying *Altgilbers*), cert. denied, New Mexico Supreme Court, Docket No. S-1-SC-37991 (December 12, 2019); see also, e.g., *State* v. *Hoban*, 738 S.W.2d 536, 541 (Mo. App. 1987) ("[l]eeway is necessary in charging sexual abuse and sexual intercourse with minors because children who are the victims of abuse may find it difficult to recall precisely the dates of offenses against them months or even years after the offense has occurred"); *Huddleston* v. *State*, 695 P.2d 8, 10–11 (Okla. Crim. App. 1985) ("when a child of tender years is under the exclusive domination of one parent for a definite and certain period of time and submits to sexual acts at that parent's demand, the separate acts of abuse become one transaction"); *State* v. *Petrich*, 101

Wn. 2d 566, 572, 683 P.2d 173 (1984) (giving prosecutor discretion as to whether to charge individual instances or course of conduct in incest cases but requiring specific unanimity instruction), overruled in part on other grounds by *State* v. *Kitchen*, 110 Wn. 2d 403, 756 P.2d 105 (1988); *State* v. *Lomagro*, 113 Wis. 2d 582, 589, 335 N.W.2d 583 (1983) ("[w]e . . . adopt [the] flexible rule that it is initially up to the state to determine the appropriate charging unit for a particular criminal episode").

[33] See, e.g., *People* v. *Jones*, supra, 51 Cal. 3d 305 ("any constitutional principles or evidentiary standards we develop should attempt to [ensure] that the resident child molester is not immunized from substantial criminal liability merely because he has repeatedly molested his victim over an extended period of time"); *State* v. *Cruz*, Docket No. A-1-CA-35877, 2019 WL 5095831, *2 (N.M. App. September 30, 2019) ("[Y]oung children cannot be held to an adult's ability to comprehend and recall dates and other specifics. The predictable limitations of young witnesses should not be turned into a reason to prevent prosecution of their abusers." (Internal quotation marks omitted.)), cert. denied, New Mexico Supreme Court, Docket No. S-1-SC-37991 (December 12, 2019).

[34] See, e.g., *State* v. *Generazio*, 691 So. 2d 609, 611 (Fla. App. 1997) ("other state courts . . . have allowed the matter of how to charge these sensitive and [difficult to define] acts of sexual abuse to rest in the discretion of prosecutors"); *State* v. *Altgilbers*, 109 N.M. 453, 465, 786 P.2d 680 (App. 1989) ("[c]ourts almost uniformly grant prosecutors discretion in how they frame the charges [of sexual misconduct against children]"), cert. denied, 109 N.M. 419, 785 P.2d 1038 (1990).

Although the majority is correct that whatever rules we adopt will potentially apply to most crimes, the practical reality is that the scope of the continuing offense doctrine is most frequently implicated, and most hotly debated, in cases that involve child sexual abuse. As a practical matter, regardless of which approach we adopt, course of conduct charging will not be appropriate for the vast majority of criminal prosecutions.

[35] As I demonstrate in my concurring and dissenting opinion in the companion case, *State* v. *Joseph V.*, supra, 345 Conn.       (*Mullins, J.*, concurring in part and dissenting in part), the flaw latent in the majority's approach comes into sharper contrast when we compare the disparate treatment that fundamentally comparable statutes—such as child sexual assault and risk of injury—receive under that duplicity framework.

[36] See, e.g., *State* v. *Kulmac*, 230 Conn. 43, 68–69, 644 A.2d 887 (1994) ("Each separate act of . . . risk of injury constituted a separate offense. . . . Each act can constitutionally support a separate conviction for risk of injury." (Citations omitted; footnote omitted.)); *State* v. *Snook*, 210 Conn. 244, 261–62, 555 A.2d 390 (rejecting argument that § 53-21, as charged, proscribed continuing course of conduct such that each separate act could not be charged as separate violation), cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989).

[37] The court also cited the general principle that, when "time is not of the essence or gist of the offense, the precise time at which it is charged to have been committed is not material." *State* v. *Hauck*, supra, 172 Conn. 150.

[38] The majority addresses *Hauck* in a footnote, contending that, "to the extent *Hauck* was ambiguous regarding its reliance on the language of the statute," cases decided decades later clarified that, in *Hauck*, we were really relying on the "situation" language in the statute. (Internal quotation marks omitted.) Footnote 26 of the majority opinion. I disagree. First, we were not "ambiguous" in *Hauck*; surely, the fact that we never mentioned the language of the statute, and instead provided policy rationales in support of our decision, is good evidence that *Hauck* was not a statutory interpretation case. Second, there is no suggestion in *Hauck* that the defendant was prosecuted for placing the victim in a dangerous situation, rather than for subjecting her to sexual acts likely to impair her morals. Indeed, the word "situation" appears nowhere in the decision. Third, the majority's suggestion that *Hauck*'s successor cases, such as *Spigarolo*, approved course of conduct charging on the basis of the "situation" language in § 53-21 is misleading. As in *Hauck*, this court relied not on that statutory language but on practical considerations; see, e.g., *State* v. *Spigarolo*, supra, 210 Conn. 391 ("[b]ecause the state was unable to specify with greater precision the times of the alleged incidents, it necessarily proceeded under a theory that the defendant's conduct was in the nature of a continuing offense"); as well on the conceptual distinctness principles that the majority repudiates. See, e.g., id., 391–92.

[39] The majority relies on language in the legislative history reflecting the fact that, prior to the 1995 amendment of § 53-21, that statute, which prohib-

ited both *acts* likely to impair the health or morals of children and the placing of children in dangerous or unwholesome *situations*, did not distinguish between sexual and nonsexual risk of injury. Legislators divided the statute into sexual and nonsexual parts at that time, so that individuals convicted of inappropriate sexual contact with children could be subjected to mandatory minimum sentences and sex offender registration requirements. All this is true. But it provides little support for the majority's position. The bill's sponsor indicated that the legislature was not merely separating out sexual from nonsexual harms to children but was making a "change in the definition of risk of injury . . . so that the offense can be more carefully delineated." 38 S. Proc., supra, pp. 1769–70, remarks of Senator Martin M. Looney. In addition, unlike the original statute, which is now subsection (a) (1), the sexual misconduct component of the statute, subsection (a) (2), makes no mention of situations, only of specific acts. The fact that the legislature expressly prohibited both dangerous situations and inappropriate acts in subsection (a) (1), but only inappropriate sexual acts in subsection (a) (2), cannot have been accidental. See, e.g., *Rutter* v. *Janis*, 334 Conn. 722, 739, 224 A.3d 525 (2020).

To be clear, I agree with the majority that course of conduct charging is permissible under § 53-21 (a) (2). I just do not perceive anything in the plain language of the statute or the legislative history that resolves, or even contemplates, the issue, one way or the other. I conclude that, as with most criminal statutes that are silent on this issue, the legislature has left the charging of these crimes to the discretion of the prosecutor, subject always to judicial supervision.

[40] See, e.g., *United States* v. *Webster*, 231 Fed. Appx. 606, 607 (9th Cir. 2007) (even if it was assumed, arguendo, that failure to give specific unanimity instruction was error in view of specific facts of case, error was harmless because evidence of guilt was overwhelming).

Note that, even when course of conduct charging is unsuitable, I would conclude that duplicitous charging represents a violation of the rules of criminal procedure and not a per se constitutional violation. In practice, however, in most cases in which the multiple violations charged in one count cannot reasonably be characterized as part of a single scheme or plan, the defendant's sixth amendment rights will be violated in the absence of a specific unanimity instruction or election by the state to proceed only on one allegation.

[41] Compare statutes in which a legislature *expressly* authorizes course of conduct charging, such as § 53a-181d (b), which provides in relevant part: "A person is guilty of stalking in the second degree when:

"(1) Such person knowingly engages in a course of conduct directed at or concerning a specific person . . . ."

Section 53a-181d (a) (1) provides in relevant part that " '[c]ourse of conduct' means two or more acts . . . ."

[42] S, the victim of the charges in count five, claimed only that the defendant touched her inappropriately in a series of interactions on one summer evening after her eighth grade year. I agree with the majority that there is no unanimity problem with respect to count five because, among other things, the jury reasonably could have found that the testimony related to one ongoing incident of abuse. See, e.g., *Steele* v. *State*, 523 S.W.2d 685, 687 (Tex. Crim. App. 1975); *State* v. *Lomagro*, 113 Wis. 2d 582, 594–95, 598, 335 N.W.2d 583 (1983).

[43] Although the sixth amendment right to a unanimous jury was not yet fully incorporated when *Richardson* was decided, the federal courts have not questioned this analysis in the wake of *Ramos* v. *Louisiana*,      U.S.     , 140 S. Ct. 1390, 1397, 206 L. Ed. 2d 583 (2020).